Alex M. Weingarten (SBN 204410)
 AWeingarten@willkie.com
Koren L. Bell (SBN 268614)
 KBell@willkie.com
Jeffrey K. Logan (SBN 136962)
 JLogan@willkie.com
Amy M. Stern (SBN 311382)
 AStern@willkie.com
**WILLKIE FARR & GALLAGHER LLP**
2029 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 855-3000
Facsimile: (310) 855-3099

Katrina M. Robson (SBN 229835)
 KRobson@willkie.com
**WILLKIE FARR & GALLAGHER LLP**
1875 K Street
N.W. Washington, DC 20006
Telephone: (202) 303-1000
Facsimile:  (312) 728-9199

*Attorneys for Plaintiff Fitness Technologies Group LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| Fitness Technologies Group LLC<br><br>                    Plaintiff,<br><br>    vs.<br><br>ClubReady, LLC<br><br>                    Defendant. | Case No. _____<br><br>**COMPLAINT FOR:**<br><br>1)  **UNLAWFUL RESTRAINT OF TRADE IN VIOLATION OF THE SHERMAN ACT (15 U.S.C. § 1)**<br>2)  **MONOPOLIZATION IN VIOLATION OF THE SHERMAN ACT (15 U.S.C. § 2)**<br>3)  **ATTEMPTED MONOPOLIZATION IN VIOLATION OF THE SHERMAN ACT (15 U.S.C. § 2)**<br>4)  **DECLARATORY RELIEF (28  U.S.C. § 2201)**<br><br>**DEMAND FOR JURY TRIAL** |

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA  90067
310-855-3000

65438332.17

Plaintiff Fitness Technologies Group LLC ("Fitness Technologies") alleges the following against Defendant ClubReady, LLC ("ClubReady"):

## INTRODUCTION

1.      Plaintiff Fitness Technologies brings this action to: (a) stop Defendant ClubReady's intentional, predatory, and unlawful efforts to destroy competition in the market for fully integrated member management and licensed payment facilitator solutions for enterprise-level boutique fitness studios in the United States (the "Relevant Market"); and (b) request a judicial declaration that Fitness Technologies has not misappropriated any trade secrets of ClubReady.

2.      Fitness Technologies is an innovative technology and software services company that is committed to providing high-quality, integrated enterprise solutions to franchises and multi-location businesses with fifty or more boutique fitness studios across the country ("Enterprise-Level Fitness Boutiques").

3.      Enterprise-Level Fitness Boutiques offer classes ranging from yoga and Pilates to cycling and boxing and have specific needs when it comes to the software they use.  Fitness studio enterprises need software that not only allows individual studio operators to post class schedules, access membership agreements, and manage their staff, but also provides access to data for each individual studio at all levels of the corporate hierarchy and automates royalty collection.  As such, a fully-integrated solution requires a licensed payment facilitator that is authorized to automatically allocate royalties and other fees at the time of every transaction.

4.      Fitness Technologies is developing a fully-integrated member management and licensed payment facilitator solution that meets the unique needs of Enterprise-Level Fitness Boutiques.  Its President, Bryan Arp, a twenty-year veteran of the fitness industry, is an acknowledged and highly regarded expert in the field and has extensive experience developing technological products and digital infrastructures for fitness and wellness facilities.  Mr. Arp launched Fitness Technologies to address the demand among Enterprise-Level Fitness Boutiques for an alternative to ClubReady, which has been delivering poor services at supracompetitive prices.  Fitness Technologies will benefit both Enterprise-Level Fitness Boutiques and their

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

65438332

members by offering a competitively priced, higher-quality, and more efficient solution. However, those benefits are being blocked by ClubReady.

5.     ClubReady, which was founded in 2009, bills itself as "the leading provider of full-suite studio fitness and wellness club management software and services." It controls more than 60% of the sales of member management software to Enterprise-Level Fitness Boutiques locations and *all* sales of fully-integrated member management and licensed payment facilitator solutions.

6.     ClubReady is a monopolist and possesses monopoly power in the Relevant Market. Its domination is not based on superior product, business acumen, or historic accident. ClubReady's inept processes, broken code, inferior platform, and lack of resources regularly cause, among other issues, significant stretches of downtime during which fundamental tasks like viewing class schedules and reserving and paying for classes are inaccessible to studio operators and their members.  ClubReady's deficient software has left fitness enterprises in desperate need of innovation from a competitor, such as Fitness Technologies.

7.     As explained in further detail below, ClubReady has engaged in anticompetitive conduct designed to maintain and enhance its monopoly in the Relevant Market.  To block customers from switching to more efficient competitors, ClubReady has engaged in a scheme of unlawful conduct including, but not limited to, foreclosing a substantial share of the Relevant Market, raising barriers to entry, and barring skilled and knowledgeable professionals from working for competitors.

8.     Specifically, ClubReady (and by extension the powerful investment firms behind it) has obtained and maintains monopoly power in the Relevant Market by, among other things:

- Requiring exclusivity terms that last up to five years and effectively prohibit a customer from committing or transitioning to a new provider without creating enterprise-risking disruption;

- Acquiring or otherwise tying up other technology companies that offered critical features such as data analytics and automated email and text message communication services to ClubReady's customers;

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA  90067
310-855-3000
65438332

- Suing and threatening to sue executives and employees who accept employment with a competitor; and

- Imposing an anti-employee-poach policy on competitors, including by refusing customer requests to work with a company that was hiring former ClubReady employees.

9.      ClubReady's anticompetitive conduct has harmed Fitness Technologies by erecting a barrier to engaging with customers and beta testing its solution: any prospective customer with a long-term exclusive agreement risks a breach-of-contract suit.  Further, these terms bar customers and Fitness Technologies from beginning the six- to nine-month process of transitioning their technology platform until the expiration of the ClubReady contract, putting the customer at risk of not having *any* platform for that period.

10.      ClubReady has further harmed competition by depriving competitors of skilled and knowledgeable employees.  Not only has Fitness Technologies been forestalled from pursuing the opportunity to hire interested professionals, but ClubReady has accused Mr. Arp of improperly using or disclosing ClubReady's trade secrets even though Mr. Arp has not improperly acquired or disclosed any trade secrets of ClubReady, let alone used them in developing Fitness Technologies' fully-integrated member management and licensed payment facilitator solution.

11.      ClubReady's conduct has no legitimate business purpose and does not provide any benefits to customers.  Instead, it is designed to increase the company's profitability by locking customers into ClubReady's inferior product, blocking competitors from the Relevant Market, driving up prices, and decreasing employee mobility.  Its conduct has not lowered prices, increased efficiency, or resulted in better solutions or services.

12.      If ClubReady is permitted to continue its anticompetitive tactics, innovators like Fitness Technologies will be foreclosed from the Relevant Market, customers will pay supracompetitive prices for a poorly functioning solution, and skilled workers will be bullied into remaining with ClubReady or abandoning their careers.  Fitness Technologies brings this action to seek damages and permanently enjoin ClubReady's ongoing efforts to illegally block, foreclose,

65438332

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA  90067
310-855-3000

1    or significantly limit and hinder competition in the Relevant Market.  Fitness Technologies also

2    seeks a judicial declaration that it has not misappropriated any trade secrets of ClubReady.

3                                            **PARTIES**

4        13.    Fitness Technologies is a limited liability company organized under the laws of the

5    State of Delaware, with its principal place of business in San Francisco, California.

6        14.    ClubReady is a limited liability company organized under the laws of the State of

7    Delaware, with its principal place of business in St. Louis, Missouri.

8                                  **JURISDICTION AND VENUE**

9        15.    This Court has subject matter jurisdiction over Fitness Technologies' antitrust

10   claims arising under Sections 1 and 2 of the Sherman Act (15 U.S.C. Sections 1 and 2) and

11   Sections 4 and 16 of the Clayton Act (15 U.S.C. Sections 15 and 26) pursuant to 28 U.S.C.

12   Section 1337.  This Court has jurisdiction over the claims for declaratory relief pursuant to 28

13   U.S.C. Sections 2201 and 2202 because there is an actual case or controversy between the parties

14   concerning alleged trade secret misappropriation, and the claims do not raise a novel or complex

15   issue of state law, nor present any exceptional circumstances or compelling reasons for this Court

16   to decline jurisdiction.  This Court also has supplemental jurisdiction over any claims herein

17   arising under state law pursuant to 28 U.S.C. Section 1367.

18       16.    This Court has personal jurisdiction over ClubReady because it is and was at all

19   relevant times conducting substantial and continuous business in the State of California, including

20   in San Francisco, California.  ClubReady's customers include enterprises that operate hundreds of

21   fitness studios involving millions of repeated and successive business transactions, including in

22   San Francisco, California.  Additionally, on information and belief, Clubessential Holdings, LLC

23   ("Clubessential Holdings") is an owner of ClubReady and has owners domiciled in California.

24       17.    Venue is proper in this judicial district pursuant to 28 U.S.C. Section 1391(b)(2)

25   because a substantial part of the acts or omissions giving rising to the claims set forth herein

26   occurred in this judicial district, and ClubReady's anticompetitive scheme has impacted Fitness

27   Technologies, which was harmed and has its principal place of business in this district.

28

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA  90067
310-855-3000

COMPLAINT

65438332

18.     ClubReady's misconduct occurs in and affects interstate commerce. ClubReady has contracted with enterprises throughout the United States to foreclose its competitors. ClubReady regularly provides fully-integrated member management and licensed payment facilitator solutions to fitness studios in all parts of the country, and it has used the anticompetitive conduct described herein to restrain trade and monopolize commerce in the Relevant Market throughout the United States. ClubReady's conduct directly affects the price and quality of enterprise solutions provided through interstate commerce.

## FACTUAL BACKGROUND

### I.     Relevant Product and Demand

19.     Not all gyms, health clubs, and fitness studios have the same needs when it comes to their software. Unlike "big box" gyms, which are large corporate chain facilities that offer autonomous use of a wide range of fitness equipment, boutique fitness studios are generally small in size and offer group classes that focus on one or two types of workouts. Boutique fitness studios offer an exclusive experience, as the number of spots available in each class tend to be limited, and reservations are normally required in advance. Also unlike gyms, which generally offer only monthly or annual memberships for a set price, boutique fitness studios often allow for purchases of single classes, packages with a set number of classes that can be used over a set period of time, and monthly memberships that offer an unlimited number of classes per month and renew automatically.

20.     The success of a boutique fitness studio turns not only on the quality of its facilities, instructors, and classes but also the ease with which its customers can view, book, and pay for those classes, and the studio's ability to streamline business functions to keep costs low. For this reason, boutique fitness studios rely on software solutions to manage their day-to-day operations, including, among other tasks, scheduling fitness classes, enrolling new customers with contracts and liability waivers, booking customers, charging customers, selling merchandise, reviewing inventory, communicating with customers, paying instructors, and converting leads into revenue.

21.     Enterprise-Level Fitness Boutiques, *i.e.,* franchises and businesses with at least fifty locations, require even more from their software in order to manage their operations. They must

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA  90067
310-855-3000

provide not only the same level of digital and in-person customer service and class quality as that offered by a single studio consistently across all of their locations, but also a seamless process that allows customers to book classes at studios for different brands and in different locations from one day to the next.  And, with respect to payment processing, they face the additional hurdle of having to implement a process for calculation and payment of the various royalties and franchise fees that must be transferred from every individual studio to the larger organization.

22.     The solution must also be scalable, able to expand to handle additional brands and locations as they are added and equally able to remove locations when necessary without disrupting other brands or locations.  Finally, the solution must operate bilaterally, pushing permissions and controls up and down through the organization.

23.     In short, Enterprise-level Fitness Boutiques need a suite of interoperable services on a platform capable of handling the complexities of multiple brands, potentially hundreds (if not thousands) of locations, and a diverse set of individual owners, with varying degrees of business expertise.  This creates a unique demand for a fully-integrated member management and licensed payment facilitator solution.

## II.   Relevant Markets

### A.   Relevant Product Market

24.     The Relevant Market is the market for fully-integrated member management and licensed payment facilitator solutions for Enterprise-Level Fitness Boutiques in the United States. Enterprise-Level Fitness Boutiques comprise franchises and multi-location businesses with fifty or more fitness studio locations across the country.  While there are technology companies that offer either member management software *or* payment facilitator services for use by Enterprise-Level Fitness Boutiques, technology solutions that offer one or the other are not interchangeable with technology solutions that offer both.

25.     Member management software generally encompasses class scheduling and reservations, electronic membership agreements and waivers, and staff management, along with other features such as fitness performance data, integrated text message and email services, and

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

65438332

data and analytics.  The market for member management software for Enterprise-Level Fitness Boutiques is largely controlled by ClubReady, Mindbody, and Zenoti.

26.     On information and belief, ClubReady controls more than 60% of the sales to locations in the Relevant Market.  Mindbody and Zenoti control approximately 35% and 3%, respectively.  The metric for determining market share is the number of boutique fitness studios that use each of these providers, as enterprises in need of member management software pay for the technology by location.  Of the three software providers, ClubReady is the only one that sells a fully-integrated solution with a licensed payment facilitator.  Mindbody and Zenoti are not licensed payment facilitators.  Although they contract with a third party to process in-studio and online payments, they do not allow for automatic allocation of royalties, marketing fees, and other third-party fees assessed by franchisors and multi-location fitness enterprises at the time of each individual transaction.  In order to work around this, enterprises that utilize these other member management platforms are required to make significant investments in resources such as accounting departments to manage those payments by their franchisees and studio locations.  Thus, software that provides a member management platform without an integrated licensed payment facilitator that automates enterprise-level transactions is an inadequate substitute for a solution that offers both components.

27.     Industry participants recognize that other solutions are not interchangeable with ClubReady, which is why ClubReady continues to monopolize the Relevant Market despite its underperformance.  Even if other member management software offered a better performing product at similar prices, few, if any, Enterprise-Level Fitness Boutiques would switch from ClubReady because of the significant additional time, resources, and costs that would be required to compensate for the absence of a licensed payment facilitator.

28.     As a monopolist, ClubReady could profitably impose a permanent price hike—an increase in its prices that is significant, non-transitory, and not justified by increased cost of production.  Indeed, ClubReady's repeated stretches of downtime and slowness already effectively increase the price of its solution for enterprises, franchisees, and studio owners who lose revenue

as a result of the disruptions to their technology platform.  Recent reviews by studio operators and members who have used ClubReady to book fitness classes include, for example:

- "This system is super clunky. Too many ways to do the same thing. Need to narrow it down. Its not teachable. It accounts for MANY billing errors. Completely losing money using this system. Money on payroll, money on loss of billings."

- "[S]ystem frequently goes down and there have been instances of data changing/switching of members which is alarming and worrisome."

- "Reliability is non-existent. Spinning wheels, crashes way too frequently, outages. ClubReady has no sense of urgency to fix the problems and pretty much says, oh well, too bad, so sad."

- "Customer service is the worst. They have limited hours (7am-7pm CST Monday-Friday) and no hours on the weekend."

- "It is hard to run a business on software that is not available and up and running."

- "Very, very limited. I would have expected more functionality. Especially for what the monthly fees cost you."

- "This app is inconsistent. . . . [I]t doesn't always show full classes to be added to the waiting list. Which leads me to believe there might be open classes that are not appearing on the schedule."

- "This app is horrible, sometimes works and sometimes does not. Have not been able to log into class for two weeks."

29.     Despite the costs of ClubReady's flawed solution to its customers, ClubReady has not lost meaningful business to either Mindbody or Zenoti because, on information and belief, Enterprise-level Fitness Boutiques require the integration described above.

30.     The Herfindahl-Hirschman Index ("HHI") is a measure to evaluate market concentration.  A market's HHI is calculated by summing the squares of each market participant's market share.  A market with an HHI above 2,500 is considered highly concentrated, a market with an HHI of 1,500 - 2,500 is considered moderately concentrated, and a market with an HHI below 1,500 is considered unconcentrated.  HHIs for the Relevant Market—controlled solely by

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA  90067
310-855-3000

9

65438332

ClubReady—are the most extreme level of concentration at 10,000.  Even if Mindbody's and Zenoti's software were included in the calculations, the HHI would still exceed 4,500, indicating that the market is highly concentrated.

**B.  Relevant Geographic Market**

31.    As noted above, the effective area of competition (or relevant geographic market) for the product market at issue here is the United States.  Becoming a licensed payment facilitator is a lengthy process, and companies that wish to serve as payment facilitators in different countries must meet different licensing requirements.  Thus, a company that operates as a licensed payment facilitator in the United States cannot automatically offer its services in the global market.

32.    On information and belief, the only territory in which ClubReady is licensed as a payment facilitator is the United States.

**III.  ClubReady Dominates the Relevant Market**

33.    ClubReady dominates the market for fully-integrated member management and licensed payment facilitator solutions for Enterprise-Level Fitness Boutiques in the United States.  On information and belief, ClubReady controls more than 60% of the sales for member management software and is the ***only*** company that sells a fully-integrated solution with a licensed payment facilitator.  ClubReady has achieved this monopolization of the Relevant Market by resorting to anticompetitive conduct that has blocked more innovative competitors from entering.

**A.  ClubReady Has Monopoly Power**

34.    As discussed above, the market for member management software for Enterprise-Level Fitness Boutiques is highly concentrated.  There are currently only three companies that serve the member management needs of these enterprises in the United States: ClubReady, Mindbody, and Zenoti.  ClubReady, by its own admission, is "the leading provider of full-suite studio, gym, health, and wellness club management software and services," selling its member management software to more than 60% of enterprise fitness boutique locations.  On information and belief, ClubReady's market share is longstanding and durable, as it has maintained this share of Enterprise-Level Fitness Boutique locations since at least the beginning of 2020.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA  90067
310-855-3000

65438332

35.     As advertised, ClubReady's technology solution encompasses:

- *Member Management*.  These features streamline member account management and payment options by offering electronic liability waivers and agreements, automated data validation and payments, and electronic client accounts providing, among other information, a client's visit history, purchases, class schedules, and payment schedules.

- *Point of Sale*.  These features provide recurring billing schedules, prepaid memberships, single and multi-class purchases, in-studio retail product sales and inventory management, and integrated payment processing.

- *Employee Management*.  These features allow for tracking of employee and instructor wages and hours, sales commissions, and payroll.

- *Member Acquisition*.  These features enable sales, marketing, and lead management through automated and customized communications, including phone calls, text messages, and emails, in addition to custom "KPIs"—key performance indicators that track and optimize performance.

- *Reporting and Analytics*.  These features allow reports to be run by brand, location, or company-wide for purposes such as financial forecasting, reducing member attrition based on member demographics and club usage, and maximizing staff productivity.

- *Royalty Engine*.  As a licensed payment facilitator, ClubReady provides franchises and other enterprises with the ability to collect fees from their studios including those for royalty, technology, and advertising, all with streamlined reporting.

36.     As stated above, Mindbody's and Zenoti's software are not reasonable alternatives to the fully-integrated member management and licensed payment facilitator solution that ClubReady offers.  ClubReady's solution not only enables instantaneous consumer payments but also offers franchise-specific features like royalty management and the ability to allocate funds between, for example, a franchisor and a franchisee.  This means that ClubReady has the ability to

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

11
65438332

deliver royalties, marketing fees, and other third-party fees paid by franchisees automatically at the time of a transaction.

37.    Mindbody and Zenoti, on the other hand, use a third-party payment facilitator for online payments and require enterprise customers to separately assess royalties and other franchise fees.  Thus, enterprises that use Mindbody and Zenoti are required to come up with costly workarounds, such as hiring robust accounting departments, in order to ensure their specific needs are met.  Even with these add-ons, the enterprises lose revenue as a result of the inability to receive these fees automatically.  Zenoti has become a fringe player in providing its services to Enterprise-Level Boutiques and Mindbody is struggling to maintain its presence.  For example, F45—the second largest boutique fitness enterprise that uses Mindbody—has lost over a quarter of its locations since September 30, 2022 and, reportedly is "vastly underperforming the sector in profitability and momentum," with analysts projecting that it is headed towards bankruptcy.

38.    As further proof of ClubReady's monopoly power, ClubReady has executed on an anti-poaching policy that has imposed costs and inconveniences on customers and employees without having any meaningful effect on its substantial market share.  For example, in 2021, Xponential Fitness, Inc. ("Xponential"), ClubReady's largest customer, requested that ClubReady make it possible for Xponential to use a Performance IQ feature provided by ClubReady with the Glofox member management software Xponential had been using in international markets.  Although the project was already underway, ClubReady pulled out because, as it told Xponential, Glofox had "poached" two of its former employees—meaning that Glofox was hiring two ex-employees of ClubReady.  On information and belief, ClubReady threatened to sue Glofox if it hired any more ex-ClubReady employees, even those that ClubReady had laid off during the COVID-19 pandemic.  ClubReady's discipline of Glofox, a potential competitor, not only deprived Glofox of revenues, it disrupted Xponential's business, caused it inconvenience, and imposed additional costs.  Nevertheless, ClubReady continued to control the technological solution of Xponential's locations in the U.S. market and, on information and belief, did not lose any meaningful share of its dominant position.  ClubReady's conduct also sent a message to

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

Glofox and other upstarts that it would use its dominant position to discipline those who hired former ClubReady employees.

39.     ClubReady's monopoly position is protected by high barriers to entry and expansion, including its entrenched monopoly, trade restraints, and history of anticompetitive conduct described herein.

40.     In addition, lengthy licensing processes are a meaningful barrier to entry.  Becoming a licensed payment facilitator is an arduous process that, until recently, could take up to five years. Even now, it can take three years to receive a license to operate in the United States.  Different territories also have different licensing requirements, with each country requiring separate authorization.

41.     Another barrier to entry is the high switching costs for Enterprise-Level Fitness Boutiques.  These enterprises combine the ambiance and idiosyncrasies of individual locations with the sophistication and complications of major enterprises, hence their unique demand for an enterprise-level technological solution.  Part of that unique demand is the need for the solution to be fit to the work and service flow of each boutique *and* interoperate across more than fifty businesses.  To execute a solution that can be both individualized and interoperable at that scale can take half a year or more.

42.     Technological development and know-how is yet another barrier to entry.  The design and coding process for an all-encompassing solution requires a substantial up-front capital investment.  Such investments are required to design a solution that has the capability of achieving scale in the Relevant Market.  Further, companies attempting to launch such products need to employ highly skilled professionals, including individuals with technical backgrounds.

43.     ClubReady's dominant market share, buttressed by high market barriers, indicates that ClubReady wields monopoly power in this market.  And it has successfully used that monopoly power to impose onerous commercial terms, overpriced solutions, and poor service on its customers while blocking existing or potential competitors from depriving it of sales by expansion or entry.

**B.     ClubReady Overcharges and Underperforms**

65438332

44.     Because ClubReady is the only company offering a fully-integrated member management and licensed payment facilitator solution, it is able to lean on its monopoly power to force an overpriced, technologically-flawed solution on its customers who otherwise would have no technological platform capable of integrating membership management and payment requirements.

45.     As a result, on information and belief, ClubReady has maintained a profitable business even as its defective software and inadequate resources have caused multiple system failures and slowdowns that prevent customers from accessing booking software for their studios during peak usage times and from processing memberships and payments.  These failures and slowdowns have an equally detrimental effect on the experience of the fitness studio members who are unable to view class schedules, reserve spots in classes, pay for class purchases, and check in for classes during the all too frequent periods of service outages and delays.

46.     On information and belief, ClubReady's persistent failure has had a significant impact Xponential—also the largest global franchise group of boutique fitness brands.  By way of example, in January 2021—the busiest month of the year for gyms and fitness studios receiving an influx of new members anxious to carry out their New Year's resolutions—Xponential franchisees and members were unable to use ClubReady's platform for approximately 400 minutes.  In a January 29, 2021 letter ClubReady drafted regarding its failure to perform, ClubReady explained that it "was not prepared for the 35% increase in system use"—despite having been in the business for years and knowing full well that such an increase could be expected.  In that letter, ClubReady also admitted to reducing server capacity and laying off engineers in spite of the increasing usage of its software by Xponential's franchisees and studio members.

47.     As 2022 approached, ClubReady repeatedly released software changes to its system without notifying anyone at Xponential, causing confusion among the franchisees and triggering several issues with the software.  Xponential's franchisees also experienced constant mishaps such as CycleBar members being assigned to incorrect bikes, other studio members waking up to find their class schedules and bookings missing, and countless errors with payment processing—all due to ClubReady's deficient software release and quality assurance processes.

65438332

48.     Xponential's experience with ClubReady's software has not changed since then, as it is still routinely plagued by stretches of downtime and slowness that have frustrated Xponential's franchisees and their fitness studio members alike.  Indeed, franchisees are still receiving reports of classes seemingly disappearing from their daily schedules.  It is also routinely the case that ClubReady will add or change certain software features for a fitness studio, such as allowing more than one instructor to be listed as teaching a single class, and suddenly bookings for the entire studio are inaccessible.  On information and belief, this is a result of ClubReady's outdated software that has no chance of fulfilling the needs of growing enterprises.

49.     Xponential is the not the only enterprise that has seen its business suffer due to ClubReady's underperformance.  On information and belief, Fit Body Boot Camp, Mayweather Boxing, StretchZone, and 9Round—4 of the top 15 largest boutique enterprises in the United States—all find ClubReady's solution to be woefully deficient and have voiced their complaints about ClubReady's significant shortcomings.

50.     Fitness studios at the enterprise level depend on club management software for their day-to-day operations, including, among other tasks, scheduling fitness classes, booking members into those classes, charging members for classes, and selling merchandise.  When these software services fail, it substantially impairs the ability of their users to conduct their business and results in significant reputational harm and a loss of members.

51.     In a competitive market, ClubReady's success would depend on its ability to remedy the deficiencies in its solution and introduce additional innovative tools that would meet the needs of its Enterprise-Level Fitness Boutique clients.  But ClubReady's leadership lacked the technological talent required to maintain its dominance in the face of disruptors interested in entering the market.  Unable to extend its dominance by hard work and innovation, the company turned to tactics designed to block companies from ever gaining the scale necessary to effectively compete.

## IV.   **The Challenged Anticompetitive Conduct**

52.     ClubReady engaged in a variety of acts that, separately and together, prevent rivals from competing in the Relevant Market and offering a higher quality service.  ClubReady's

65438332

conduct has foreclosed competition for more than 60% of Enterprise-Level Fitness Boutique locations.

**A.      ClubReady Wields Exclusivity Provisions to Foreclose Competitors from the Market**

53.      ClubReady has shielded itself from the competition that would otherwise force it to improve its technological services by extracting long-term exclusive dealing provisions from its customers that foreclose potential new entrants from a substantial share of the Relevant Market. As a result of these terms, innovators have not been able to solicit the scale of customers necessary to cover the cost of developing an efficient software solution for Enterprise-Level Fitness Boutiques.

54.      By way of example only, Xponential entered into a Master Vendor Agreement ("MVA") with ClubReady on December 31, 2019 that requires every franchisee of any of Xponential's ten fitness studio brands to use the following software and services of ClubReady exclusively for a period of five years: (a) member management and class modules; (b) lead management dashboard; (c) payments system; and (d) past due communications.  The MVA expressly forbids Xponential or any franchisee from "contract[ing] with any third-party vendor to provide the same or similar products or services as ClubReady for the duration of the Term."

55.      The MVA also gives ClubReady the power to modify the agreement to its advantage if a certain number of Xponential franchisees refuse to use ClubReady's services.  Pursuant to the MVA, if less than 98% of the total Xponential franchisees utilize and pay for ClubReady's services, ClubReady has the right to extend the term by twelve months.  If that number falls below 95%, ClubReady has a right to extend the term of the agreement by an additional eighteen months.

56.      The MVA further purports to prohibit any party from being held liable for any type of incidental, punitive, indirect, or consequential damages in connection with any action on the contract.  It also purports to cap ClubReady's total aggregate liability to Xponential and any of its brands to the trailing three months' worth of rebates paid to Xponential or the affected brands, with the total liability not to exceed the total limits of ClubReady's insurance policies.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

65438332

57.    The MVA also purports to limit the statute of limitations on any claim Xponential or its brands may have against ClubReady to a period of one year after any such claim arises.

58.    The most pernicious aspect of ClubReady's anticompetitive contracting scheme is its insistence that Xponential use its software exclusively.  Xponential licenses ten different fitness brands—including  Pure Barre, YogaSix, CycleBar, StretchLab, and Club Pilates—and reportedly has over 2,900 studios in operation in the United States as of the filing of this Complaint.  With a single contract, ClubReady foreclosed any new entrant from at least 40% percent of enterprise-operated studios.

59.    On information and belief, ClubReady has long-term contracts with exclusivity terms with other Enterprise-Level Fitness Boutiques, insulating itself from the kind of technological innovation that these studios need.

60.    In effect, ClubReady's exclusivity terms tie up a customer for more than just the term of the contract.  On information and belief, it takes at least six to nine months for an enterprise to transition its studios to a new technological solution, as doing so involves transferring a substantial amount of data on a studio-by-studio basis and providing each studio with new hardware.  Because the terms prohibit a customer from testing out even one brand or one location on a different platform, the customer cannot beta test products or begin the process of technological transition until ClubReady's exclusivity terms expire—at which point the enterprise bears the risk of operating without a fully-integrated technological platform until the transition process can be completed, a potentially existential disruption to its operations.

61.    ClubReady has no valid business justification for its exclusionary conduct, which serves only to suppress competition and offers no procompetitive benefit.  Xponential's ten brands are distinct and may have different software needs over time, just as they have different equipment needs.  For example, on information and belief, YogaSix studios purchase yoga mats from one vendor, while CycleBar studios purchase exercise bikes from another.  When it comes to their software, however, ClubReady has required all of Xponential's brands to commit to using the same platform for a period of *five years*, with no regard to the brands' changing needs.  By requiring its stringent exclusivity provisions, ClubReady also disregards the fact that the number

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA  90067
310-855-3000

of studios of each Xponential brand varies widely.  For example, one Xponential brand may have 500 studios open in the United States, while another has only 50.  Xponential may be able to negotiate a better price per studio for those with a larger presence, either with ClubReady or elsewhere, but ClubReady's restrictive course of dealing that treats all of Xponential's brands the same leaves Xponential without that option.

**B.     ClubReady Acquires Potential Competitors**

62.     A critical vulnerability in ClubReady's monopolization scheme is the ability of innovative upstart companies to offer features not currently integrated into ClubReady's platform and, thus, not barred by ClubReady's exclusivity, such as business-specific text messaging services.  ClubReady realized that if these upstarts gained a technological toehold with ClubReady's customers, they could disrupt ClubReady's control over the Relevant Market.  Rather than compete by innovating itself, ClubReady maintained its monopoly power by acquiring companies that were emerging as competitive threats.  By buying up these companies, ClubReady extinguished the possibility that these rivals might challenge its dominance.

63.     Backed by Clubessential Holdings, which acquired ClubReady in 2018 as part of its " vision to acquire and grow category-leading, membership-management software companies," ClubReady has targeted companies that had already established relationships with its biggest customers.

64.     Clubessential Holdings describes itself as a membership-management software company.  After receiving funding and support in 2016 from Battery Ventures, LP—a global, technology-focused investment firm with investments capitalized at over $3.8 billion—Clubessential Holdings began to execute on its "vision" of rolling up technology companies that offer software solutions for member management in various vertical industries.  ClubEssential Holdings has purchased more than nineteen companies in the last seven years—eleven in the last two years alone—in the process acquiring twelve thousand customer serving over one hundred million club members.  Its aggregation includes:

- Clubessential, which provides "a full suite of membership and club management solutions to country, golf, city, yacht and other private clubs" and describes itself as

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

65438332

"the leading provider of membership and club management solutions to the private club and college athletic markets;"

- ClubReady, which, as discussed above, describes itself as "the leading provider of full-suite studio fitness and wellness club management software and services;"

- Exerp, which is described as "a global IT specialist in member management software for the fitness and leisure industry" and is headquartered in Denmark;

- foreUP, which offers cloud-based technology solutions to golf courses;

- Innovatise, which Clubessential Holdings describes as "a pioneer in mobile marketing and the creator of myFitApp, an open, flexible, independent and digital marketing platform for the fitness industry;"

- PrestoSports, which provides technology to colleges, high schools, and conference offices;

- TAC, an Austrian technology company that provides software to the spa industry, fitness market, and pool industry and, on information and belief, is used in over seventy countries; and

- Vermont Systems, which develops software products for managing recreation and parks operations for municipal, county, state, and federal military governmental entities.

65.    With the help of Clubessential Holdings and its substantial resources, ClubReady identified innovators offering technological services to its key customers, particularly Xponential, and targeted them for acquisitions. Those technology companies include:

- *Performance IQ.*  In 2017, Xponential began negotiating with Performance IQ to integrate its technology solution providing real-time individual and group fitness results into the software used by its fitness brands.  Xponential also initiated discussions to acquire Performance IQ.  However, it never had the chance to take those discussions further, because in or around September 2018—approximately one month after Xponential integrated Performance IQ technology with the software of its first studio—ClubReady acquired Performance IQ.

65438332

- *Zipwhip*.  In or around 2017, multiple Xponential fitness brands were using Zipwhip's Texting for Business solution.  By 2019, Xponential and Zipwhip were discussing a partnership for the studios' use of Zipwhip.  Those plans were quashed when ClubReady announced only months later that it would be partnering with Zipwhip.  Shortly after that announcement, Zipwhip directed Xponential to deal with ClubReady for its services.

- *Aurora*.  Meanwhile, Xponential's fitness brand Club Pilates was alternatively using Aurora (formerly known as ClubBuzz) for text message services.  Just two years after its ZipWhip play, in December 2021, ClubReady acquired Aurora, made it the only text message platform that could be fully integrated with its software, and substantially raised the prices for its services.

- *iKizmet*.  In June 2020, a number of Xponential's fitness brands contracted with iKizmet to develop a dashboard depicting up-to-date data and insights that could be used to analyze member utilization and spend behavior, accurately forecast business performance, and evaluate revenue.  In or around January 2021, less than a year later, ClubReady acquired iKizmet.

66.     With this string of acquisitions, ClubReady cleared the field of challengers.  On information and belief, as a result of its anticompetitive conduct, ClubReady dominates the Relevant Market, selling its product to the largest enterprises, including 9Round, StretchZone, Fit Body Boot Camp, Title Boxing Club, Mayweather Boxing, CKO, and Xponential's ten fitness brands consisting of Club Pilates, CycleBar, StretchLab, Row House, AKT, YogaSix, Pure Barre, Stride, Rumble, and BFT.

## C.     ClubReady Uses Intimidation to Discourage Former Executives and Employees from Seeking Employment with Potential Competitors

67.     ClubReady has also attempted to stamp out the competition by using unlawful intimidation tactics to block its executives and employees from ever taking a position with a competitor, thereby depriving individuals of professional mobility and rivals of the talent they need to compete effectively.

65438332

68.     A prime example of this is ClubReady's conduct related to its refusal to work with international software provider Glofox discussed above.  ClubReady not only blocked Glofox from the project and therefore deprived it of revenues, it also reportedly threatened to sue its own employees if they ever pursued employment with a competitor or potential competitor.

69.     Additionally, in June 2022, ClubReady filed an action in Delaware Chancery Court against ClubReady co-founder Bradley Denton and SprintFWD, LLC ("SprintFWD"), the company Mr. Denton started after he sold ClubReady to Clubessential Holdings.  In that action, ClubReady accused Mr. Denton of breaching his agreement not to compete with ClubReady by starting SprintFWD and accused SprintFWD of tortiously interfering with Mr. Denton's agreement not to compete with ClubReady.  On information and belief, ClubReady and SprintFWD worked together to develop software for Xponential for years, and it was only after ClubReady suspected that SprintFWD and Xponential were working together to create a competing software platform that ClubReady went after Mr. Denton and SprintFWD for breach of and interference with Mr. Denton's contract.

70.     ClubReady has also sought to intimidate Fitness Technologies' founder, Bryan Arp—a former Executive Chairman and consultant for ClubReady.  As part of an ongoing arbitration between ClubReady and Xponential stemming from a dispute regarding the deficient performance of ClubReady's software, ClubReady served a subpoena on Mr. Arp to learn more about Fitness Technologies and its technology.  Not only that, but ClubReady served a subpoena on Mr. Arp seeking nearly the exact same information in connection with its ongoing litigation against Mr. Denton.

71.     ClubReady has gone even further to block competition by using its former relationship with Mr. Arp to attempt to craft a claim against Fitness Technologies for misappropriation of trade secrets.  Indeed, the subpoenas served on Mr. Arp seek information such as all documents "relating to any ClubReady customer or business information provided to, discussed with, or used by Project Indigo" (the name of the development project) and "[a]ny business plans, roadmaps, or other project or product development plans" concerning Project Indigo.  On information and belief, ClubReady is seeking this information from Mr. Arp in

65438332

furtherance of its baseless claim that Fitness Technologies has misappropriated its trade secrets in connection with the fully-integrated member management and licensed payment facilitator solution it has been developing.  ClubReady's ongoing pursuit of this information from Mr. Arp is evidence of its intent to pursue legal claims against Fitness Technologies for misappropriation of trade secrets, proving that there is a current, actual controversy between the parties.

72.    The Federal Trade Commission ("FTC") has examined this type of anticompetitive conduct and its implications for competition in the context of non-competes.  The FTC has found evidence showing that employers efforts' to block employees from moving to competitors negatively impacts competition by "foreclose[ing] the ability of competitors to access talent," "reduc[ing] entrepreneurship, new business formation, or both," and "reduc[ing] that rate at which men and women found new startups."  It also has cited evidence that "indicates non-compete clauses decrease innovation" and "prevent workers from starting business in which they can pursue innovative new ideas."  Here, ClubReady's tactics are clearly intended to lock up individuals who have experience in the fitness industry—in the case of Mr. Arp, decades of experience—and deprive competitors of the opportunity to compete for that talent.  Those tactics have also given rise to the present and justiciable controversy between ClubReady and Fitness Technologies related to Fitness Technologies' alleged misappropriation of trade secrets.

## V.    ClubReady's Anticompetitive Conduct Has Caused Harm to Competition, Customers, and Fitness Technologies

73.    ClubReady's exclusionary contracts have harmed competition in the market by: (a) blocking innovators from introducing better technology for Enterprise-Level Fitness Boutiques; (b) resulting in higher prices and poorly functioning technological interfaces for customers of boutique fitness studios; and (c) causing Enterprise-Level Fitness Boutiques to suffer significant monetary and reputational damage due to widespread customer dissatisfaction with ClubReady's subpar software solutions.

74.    Fitness Technologies has been one of the primary victims of ClubReady's exclusionary conduct.  Fitness Technologies, which was founded in 2021, has developed a software that is uniquely equipped to meet the needs of Enterprise-Level Fitness Boutiques

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA  90067
310-855-3000

65438332

because it offers an all-in-one solution that combines a sophisticated member management platform with payment processing and royalty management, automated marketing and customer relationship management, multi-level reporting data and analytics, and fitness performance data. Significantly, Fitness Technologies will be the only fully-licensed payment facilitator geared towards Enterprise-Level Fitness Boutiques to rival ClubReady.

75.     In spite of its state-of-the-art features, Fitness Technologies has been blocked from engaging with potential customers due to ClubReady's above-described anticompetitive conduct, including the exclusivity provisions in ClubReady's contracts that prohibits Fitness Technologies' prospective customers, including Xponential, from "contract[ing] with any third-party vendor to provide the same or similar products or services as ClubReady for the duration of the Term."

76.     Further, ClubReady's tactics have forced Fitness Technologies to incur unnecessary and inefficient development costs.  Fitness Technologies has not been able to freely recruit the talent necessary to staff its startup, and founder Bryan Arp has been subjected to distracting and disruptive threats.  And, it is not just Fitness Technologies that suffers as a result of this type of anticompetitive conduct.  As the Federal Trade Commission has pointed out, companies' efforts to stop their employees from competing: (a) "significantly suppresses workers' wages—even for those not subject to noncompetes;" (b) "hinder[s] innovation and business dynamism in multiple ways—from preventing would-be entrepreneurs from forming competing businesses, to inhibiting workers from bringing innovative ideas to new companies;" and (c) "ultimately harms consumers," because "in markets with fewer new entrants and greater concentration, consumers can face higher prices."

77.     Fitness Technologies' injuries are of the type the antitrust laws were intended to prevent and flow from that which makes ClubReady's acts unlawful because Fitness Technologies is a direct competitor in the Relevant Market, and ClubReady has prevented Fitness Technologies from making significant headway in securing the relationships and contracts necessary for Fitness Technologies to operate at the necessary scale. Among other things, ClubReady has foreclosed a substantial portion of the Relevant Market—preventing at least 40% of Enterprise-Level Fitness

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA  90067
310-855-3000

65438332

Boutique locations from partnering with Fitness Technologies to test its product, collaborating on technological transitioning issues, or committing to a contract.

78.     On information and belief, Fitness Technologies is just the latest innovator that has been successfully excluded from the market.

79.     Fitness Technologies has antitrust standing to bring these claims because it has suffered the above-described antitrust injury and continues to suffer direct and ongoing losses from the increased costs of operation, delays in technological testing, and the loss of profitable customer-relationship opportunities.  Denying customers access to technology that will offer better services at lower costs is precisely the type of harm that the antitrust laws were intended to address.

80.     Further, there is a direct causal connection between ClubReady's antitrust violations, the harm that Fitness Technologies is suffering, and ClubReady's intent to cause harm to Fitness Technologies.  ClubReady has identified Fitness Technologies as a disruptive competitor whose innovative products pose a threat to its monopoly in the Relevant Market.  As described above, ClubReady has targeted some of its anticompetitive conduct specifically at Fitness Technologies and founder Bryan Arp.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (UNLAWFUL RESTRAINT OF TRADE (15 U.S.C. § 1))

81.     Fitness Technologies realleges and incorporates by reference Paragraphs 1 through 77 as if fully alleged herein.

82.     For purposes of antitrust review, there exists a relevant market for the sale of fully-integrated member management and licensed payment facilitator solutions for Enterprise-Level Fitness Boutiques in the United States.

83.     ClubReady has substantial market power in the Relevant Market.  ClubReady has a market share of more than 60%.  Its position in the Relevant Market is protected by high barriers to entry and expansion, and it imposes supracompetitive prices.

65438332

84.     As discussed above, ClubReady has engaged in exclusive dealing and entered into anticompetitive agreements with Xponential and other enterprises.  Its exclusivity terms require that an enterprise use only ClubReady's solution for certain services a period of up to five years. These terms effectively tie up a customer for more than just the term of the contract due to the six-to nine-month period necessary for an enterprise to transition its technology platform.

85.     Through its agreements, ClubReady has succeeded in restraining trade and causing demonstrable harm to competition in the Relevant Market, as fully pleaded above.  ClubReady has substantially foreclosed competition in at least 40% of the Relevant Market.

86.     ClubReady's above-pleaded practices have cumulatively undermined competitive processes in the Relevant Market more than they have furthered any legitimate, procompetitive purpose.  If ClubReady had any legitimate, procompetitive purpose for any of the above practices, it could have accomplished each such purpose by less restrictive methods that did not have the same anticompetitive effects.

87.     ClubReady's conduct has directly resulted in demonstrable harm to the competitive processes in the Relevant Market, including by having an adverse effect on prices, leading to fewer choices and inferior products, and limiting competitors' market penetration.  ClubReady's unlawful conduct has and will directly and proximately cause injury or loss to competition and customers in the Relevant Market.

88.     Without injunctive relief, ClubReady will continue to restrain trade in the Relevant Market, harming Enterprise-Level Fitness Boutiques and excluding competitors in order to keep its monopoly position.  Fitness Technologies is therefore entitled to an injunction pursuant to Section 16 of the Clayton Antitrust Act (15 U.S.C. § 26).

89.     Fitness Technologies has also incurred and will continue to incur actual damages as a result of ClubReady's anticompetitive conduct and is therefore entitled to recover treble damages along with reasonable attorneys' fees and costs pursuant to Section 4 of the Clayton Antitrust Act (15 U.S.C. § 15).

65438332

**SECOND CAUSE OF ACTION**

**(MONOPOLIZATION (15 U.S.C. § 2))**

90.    Fitness Technologies realleges and incorporates by reference Paragraphs 1 through 89 as if fully alleged herein.

91.    For purposes of antitrust review, there exists a relevant market for the sale of fully-integrated member management and licensed payment facilitator solutions for Enterprise-Level Fitness Boutiques in the United States.

92.    ClubReady has monopoly power in the Relevant Market.  ClubReady has a market share of more than 60%.  Its position in the Relevant Market is protected by high barriers to entry and expansion, and it imposes supracompetitive prices in the Relevant Market.

93.    ClubReady has willfully acquired and maintained monopoly power in the Relevant Market through the above-pleaded exclusionary and anticompetitive means including, among other conduct:

- Requiring exclusivity terms that last up to five years and effectively prohibit a customer from committing or transitioning to a new provider without creating enterprise-risking disruption;

- Acquiring or otherwise tying up other technology companies that offered critical features such as data analytics and automated email and text message communication services to ClubReady's customers;

- Suing and threatening to sue executives and employees who accept employment with a competitor; and

- Imposing an anti-employee-poach policy on competitors, including by refusing customer requests to work with a company that was hiring former ClubReady employees.

94.    ClubReady is engaged in an ongoing and overarching anticompetitive scheme designed to maintain its monopoly power in the Relevant Market.  By engaging in the above-pleaded conduct, ClubReady is abusing and has abused its monopoly power, and severely

65438332

impeded and undermined competition in the Relevant Market, thereby entrenching and enlarging its monopoly position.

95.     ClubReady is not competing on the merits and does not have a more efficient or superior technology solution.  Instead, ClubReady obtained and maintained its dominant share of the market through a variety of anticompetitive means.  ClubReady's conduct has directly resulted in demonstrable harm to the competitive processes in the Relevant Market, including by having an adverse effect on prices, leading to fewer choices and inferior products, and limiting competitors' market penetration.  ClubReady's unlawful conduct has and will directly and proximately cause injury or loss to competition and customers in the Relevant Market.

96.     ClubReady's unlawful conduct further harms competition and thereby causes and threatens injury or loss to Fitness Technologies' business, property, and competitive position, which will continue unless ClubReady's anticompetitive conduct is enjoined.  Specifically, Fitness Technologies has lost and will lose millions of dollars in sales and profits from within the Relevant Market that it would generate but for ClubReady's behavior.  Fitness Technologies' injuries are of the type that antitrust laws are intended to prohibit, and flow directly from ClubReady's anticompetitive conduct in violation of Section 2 of the Sherman Act.

97.     Without injunctive relief, ClubReady will continue to restrain trade in the Relevant Market, harming Enterprise-Level Fitness Boutiques and excluding competitors in order to keep its monopoly position.  Fitness Technologies is therefore entitled to an injunction pursuant to Section 16 of the Clayton Antitrust Act (15 U.S.C. § 26).

98.     Fitness Technologies has also incurred and will continue to incur actual damages as a result of ClubReady's anticompetitive conduct and is therefore entitled to recover treble damages along with reasonable attorneys' fees and costs pursuant to Section 4 of the Clayton Antitrust Act (15 U.S.C. § 15).

## THIRD CAUSE OF ACTION

## (ATTEMPTED MONOPOLIZATION (15 U.S.C. § 2))

99.     Fitness Technologies realleges and incorporates by reference Paragraphs 1 through 98 as if fully alleged herein.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA  90067
310-855-3000

65438332

100.    For purposes of antitrust review, there exists a relevant market for the sale of fully-integrated member management and licensed payment facilitator solutions for Enterprise-Level Fitness Boutiques in the United States.

101.    To the extent ClubReady does not already have monopoly power in the Relevant Market, there is a dangerous probability ClubReady will acquire that power through its anticompetitive conduct.  ClubReady is willfully engaging in the above-pleaded exclusionary and anticompetitive means including, among other conduct:

- Requiring exclusivity terms that last up to five years and effectively prohibit a customer from committing or transitioning to a new provider without creating enterprise-risking disruption;

- Acquiring or otherwise tying up other technology companies that offered critical features such as data analytics and automated email and text message communication services to ClubReady's customers;

- Suing and threatening to sue executives and employees who accept employment with a competitor; and

- Imposing an anti-employee-poach policy on competitors, including by refusing customer requests to work with a company that was hiring former ClubReady employees.

102.    ClubReady is willfully engaging in this conduct with the specific intent of achieving monopoly power and monopolizing the Relevant Market.  ClubReady is engaged in an ongoing and overarching anticompetitive scheme designed to obtain monopoly power in the Relevant Market.  There is at least a dangerous probability that, unless restrained, ClubReady will succeed in obtaining monopoly power in the Relevant Market.

103.    ClubReady is not competing on the merits and does not have a more efficient or superior technology solution.  Instead, ClubReady obtained and maintained its dominant share of the market through a variety of anticompetitive means.  ClubReady's conduct has directly resulted in demonstrable harm to the competitive processes in the Relevant Market, including by having an adverse effect on prices, leading to fewer choices and inferior products, and limiting competitors'

65438332

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA  90067
310-855-3000

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310-855-3000

market penetration.  ClubReady's unlawful conduct has and will directly and proximately cause injury or loss to competition and customers in the Relevant Market.

104.    ClubReady's unlawful conduct further harms competition and thereby causes and threatens injury or loss to Fitness Technologies' business, property, and competitive position, which will continue unless ClubReady's anticompetitive conduct is enjoined.  Specifically, Fitness Technologies has experienced higher costs and will lose millions of dollars in sales and profits from within the Relevant Market if ClubReady is allowed to continue blocking its competitive efforts.  Fitness Technologies' injuries are of the type that antitrust laws are intended to prohibit, and flow directly from ClubReady's anticompetitive conduct in violation of Section 2 of the Sherman Act.

105.    Without injunctive relief, ClubReady will continue to restrain trade in the Relevant Market, harming Enterprise-Level Fitness Boutiques and excluding competitors in order to keep its monopoly position.  Fitness Technologies is therefore entitled to an injunction pursuant to Section 16 of the Clayton Antitrust Act (15 U.S.C. § 26).

106.     Fitness Technologies has also incurred and will continue to incur actual damages as a result of ClubReady's anticompetitive conduct and is therefore entitled to recover treble damages along with reasonable attorneys' fees and costs pursuant to Section 4 of the Clayton Antitrust Act (15 U.S.C. § 15).

### FOURTH CAUSE OF ACTION

### (DECLARATORY RELIEF (28  U.S.C. § 2201))

107.    Fitness Technologies realleges and incorporate by reference Paragraphs 1 through 106 as if fully alleged herein.

108.    An actual, present, and justiciable controversy has arisen and now exists between Fitness Technologies and ClubReady with respect to ClubReady's claim of trade secret misappropriation relating to the development of Fitness Technologies' fully-integrated member management and licensed payment facilitator solution.  On information and belief, ClubReady intends to pursue legal action against Fitness Technologies on the basis of such allegations.

65438332

109.    Fitness Technologies denies ClubReady's allegations that Fitness Technologies misappropriated any trade secrets of ClubReady and used such trade secrets to develop its fully-integrated member management and licensed payment facilitator solution.  Fitness Technology contends that it never acquired, disclosed, or used any such trade secrets and that it independently developed its fully-integrated member management and licensed payment facilitator solution without using any trade secrets of ClubReady.

110.    Fitness Technologies' fully-integrated member management and licensed payment facilitator solution is intended for interstate commerce.

111.    Fitness Technologies seeks a judicial declaration that it has not misappropriated any ClubReady trade secrets.

112.    A judicial declaration is necessary and appropriate at this time in order for Fitness Technologies and ClubReady to fully resolve the pending controversy.

## **PRAYER FOR RELIEF**

WHEREFORE, Fitness Technologies prays for judgment in its favor and against ClubReady as follows:

1.      A declaration that ClubReady engaged in unlawful anticompetitive conduct in violation of Section 1 of the Sherman Act (15 U.S.C. § 1);

2.      A declaration that ClubReady engaged in unlawful anticompetitive conduct in violation of Section 2 of the Sherman Act (15 U.S.C. § 2);

3.      A declaration that Fitness Technologies has not misappropriated any trade secrets of ClubReady (28  U.S.C. § 2201);

4.      An order directing the termination of the anticompetitive conduct and injunctive relief that restores competition to the Relevant Market, including but not limited to restoring Fitness Technologies to the position it would have occupied but for ClubReady's unlawful exclusionary conduct (15 U.S.C. § 26);

5.      An award of treble the amount of Fitness Technologies' damages resulting from its antitrust injuries to be proven at trial in accordance with Section 4 of the Clayton Antitrust Act (15 U.S.C. § 15);

65438332

1        6.      An award of Fitness Technologies' cost and expenses of litigation, including its

2  attorneys' fees (15 U.S.C. § 15);

3        7.      Interest; and

4        8.      Such other relief as may be just and proper.

5  Dated:    July 24, 2023                **WILLKIE FARR & GALLAGHER LLP**

6                         By:   */s/ Alex M. Weingarten*

7                             Alex M. Weingarten

8                         *Attorneys for Plaintiff*
*Fitness Technologies Group LLC*

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA  90067
310-855-3000

65438332

## **REQUEST FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Fitness Technologies requests a trial by jury of all issues triable of right by a jury.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA  90067
310-855-3000

COMPLAINT

65438332