1    COOLEY LLP

2    Beatriz Mejia (SBN 190948)
     3 Embarcadero Center, 20th Floor
3    San Francisco, CA 94111
     Telephone:    +1 415 693 2000
4    Facsimile:    +1 415 693 2222
     mejiab@cooley.com
5

6    Deepti Bansal (Admitted *Pro Hac Vice*)
     Khary J. Anderson (Admitted *Pro Hac Vice*)
7    1299 Pennsylvania Avenue NW, Suite 700
     Washington, DC 20004
8    Telephone:    +1 202 842 7800
     Facsimile:    +1 202 842 7899
9    dbansal@cooley.com
     kjanderson@cooley.com
10

11   Germaine Habell (SBN 333090)
     355 S. Grand Avenue, Suite 900
12   Los Angeles, CA 90071-1560
     Telephone:    +1 213 561 3250
     Facsimile:    +1 213 561 3244
13   ghabell@cooley.com

14   *Attorneys for Defendant ClubReady, LLC*

15

16              **UNITED STATES DISTRICT COURT**

17          **NORTHERN DISTRICT OF CALIFORNIA**

18              **SAN FRANCISCO DIVISION**

19

20   FITNESS TECHNOLOGIES GROUP LLC,    Case No. 3:23-cv-03642-VC

21              *Plaintiff*,    **DEFENDANT CLUBREADY, LLC NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

22         v.

23   CLUBREADY, LLC,    Hearing Date: December 21, 2023
                             Time:       10:00 a.m.
24             *Defendant*.    Place:     Courtroom 4, 17th Floor
                             Judge:     Hon. Vincent Chhabria

25

26

27

28

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE that on December 21, 2023, at 10:00 a.m., or as soon thereafter

4   as this Motion to Dismiss ("Motion") may be heard in the above-titled court, located at Courtroom

5   4, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant ClubReady LLC

6   ("Defendant" or "ClubReady") will move to dismiss the Complaint filed by Plaintiff Fitness

7   Technologies Group LLC ("Plaintiff" or "Fitness Technologies"). Pursuant to Standing Order ¶ 8,

8   counsel for Defendants conferred with opposing counsel prior to filing this motion, and they agreed

9   that December 21, 2023 was a convenient date for the motion to be heard.

10         Pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6), ClubReady

11   requests that this Court dismiss, with prejudice, each of Plaintiff's claims for lack of Article III

12   standing, and alternatively, for failure to state a claim upon which relief may be granted.

13   ClubReady's Motion is based on this Notice of Motion and Motion, the accompanying

14   Memorandum of Points and Authorities, the Declaration of Deepti Bansal, and all pleadings and

15   papers on file in this matter, and upon such matters as may be presented to the Court at the time of

16   hearing or otherwise.

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 3

    A.   ClubReady's Software Services. ............................................................................. 3

    B.   ClubReady and Xponential Begin Their Relationship. ........................................... 3

    C.   Xponential Seeks to Terminate its Relationship with ClubReady and Mr. Arp Founds Fitness Technologies. ......................................................................... 4

    D.   Mr. Arp Begins His Litigation Campaign Against ClubReady. ............................. 4

ARGUMENT ....................................................................................................................... 5

I.    PLAINTIFF LACKS ARTICLE III STANDING ........................................................ 5

    A.   Plaintiff Has Not Suffered an Actual Injury in Fact .............................................. 6

    B.   ClubReady Requests Limited Jurisdictional Discovery Relating to Plaintiff's Standing if Plaintiff Opposes this 12(b)(1) Motion with its Own Evidence ................................................................................................................. 8

II.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER RULE 12(B)(6) ....... 9

    A.   Plaintiff Lacks Antitrust Standing ....................................................................... 10

        1.   Plaintiff is not prepared to enter the market. .......................................... 10

        2.   Plaintiff has not alleged harm to competition. ....................................... 14

    B.   Plaintiff's Section 1 Claims Fail ......................................................................... 16

        1.   Plaintiff Has Not Plausibly Pled that the MVA Unreasonably Restrains Trade. ........................................................................................ 17

    C.   Plaintiff Fails to State a Claim for Monopolization and Attempted Monopolization ................................................................................................... 20

        1.   Plaintiff's Alleged Market is Facially Unsustainable ............................. 20

        2.   Plaintiff Also Fails to Plausibly Plead ClubReady has Market Power. ....................................................................................................... 23

        3.   Plaintiff fails to adequately allege that ClubReady engaged in exclusionary or predatory or anticompetitive conduct. ............................ 24

        4.   Plaintiff fails to allege ClubReady had a specific intent to monopolize. ............................................................................................. 25

        5.   Plaintiff fails to allege that ClubReady's conduct created a dangerous probability of achieving monopoly power. ............................. 26

    D.   Plaintiff's Declaratory Judgment Claim Fails ..................................................... 27

CONCLUSION .................................................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*,
  2012 WL 3877783 (N.D. Cal. Sept. 6, 2012) ........................................................................ 14

*Am. Tobacco Co. v. United States*,
  328 U.S. 781 (1946) ................................................................................................................ 26

*Apple, Inc. v. Psystar Corp.*,
  586 F. Supp. 2d 1190 (N.D. Cal. 2008) ................................................................. 21, 23, 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................................... 9, 18

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990) ................................................................................................................ 15

*Barry Wright Corp. v. ITT Grinnell Corp.*,
  724 F.2d 227 (1st Cir. 1983) ............................................................................ 16, 17, 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................................... 9, 10

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
  182 F.3d 1096 (9th Cir. 1999) .............................................................................................. 20

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962) ................................................................................................................ 20

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) ................................................................................................................ 10

*Bubar v. Ampco Foods, Inc.*,
  752 F.2d 445 (9th Cir. 1985) ....................................................................................... 10, 13

*Cascade Health Sols. v. Peacehealth*,
  515 F.3d 883 (9th Cir. 2007) ................................................................................................ 20

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010) ................................................................................................ 5

*City of Oakland v. Oakland Raiders*,
  20 F.4th 441 (9th Cir. 2021) ................................................................................................. 13

*Const. Party of Pa. v. Aichele*,
  757 F.3d 347 (3d Cir. 2014) ................................................................................................... 6

Cooley LLP
Attorneys at Law
San Francisco

# TABLE OF AUTHORITIES

**Page(s)**

*Coronavirus Rep. v. Apple Inc.*,
   2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ........................................................................ 16

*Cyntegra, Inc. v. Idexx Labs., Inc.*,
   520 F. Supp. 2d 1199 (C.D. Cal. 2007) ................................................................................. 11

*Distance Learning Co. v. Maynard*,
   2020 WL 2995529 (N.D. Cal. June 4, 2020) ........................................................................ 24

*Dreamstime.com, LLC v. Google LLC*,
   54 F.4th 1130 (9th Cir. 2022) ............................................................................................... 15

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   11 F.3d 1460 (9th Cir. 1993) ........................................................................................ 10, 13

*Eagle v. Star-Kist Foods, Inc.*,
   812 F.2d 538 (9th Cir. 1987) ................................................................................................ 10

*Eastman v. Quest Diagnostics Inc.*,
   2016 WL 1640465 (N.D. Cal. Apr. 26, 2016) ...................................................................... 19

*Energy Transp. Grp., Inc. v. Mar. Admin.*,
   956 F.2d 1206 (D.C. Cir. 1992) .............................................................................................. 8

*Epic Games, Inc. v. Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023) ................................................................................................. 19

*Fed. Trade Comm'n v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) ........................................................................................ 16, 20

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................................ 27

*Hecht v. Pro-Football, Inc.*,
   570 F.2d 982 (D.C. Cir. 1977) ...................................................................................... 10, 13

*Image Technical Servs., Inc. v. Eastman Kodak Co.*,
   125 F.3d 1195 (9th Cir. 1997) .............................................................................................. 24

*Joint Stock Soc'y v. UDV N. Am., Inc.*,
   266 F.3d 164 (3d Cir. 2001) .................................................................................................... 7

*Jones v. Micron Tech. Inc.*,
   400 F. Supp. 3d 897 (N.D. Cal. 2019) .................................................................................. 10

*Kamakahi v. Am. Soc'y for Reprod. Med.*,
   305 F.R.D. 164 (N.D. Cal. 2015) ............................................................................................ 7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

*Kelsey K. v. NFL Enters., LLC,*
    757 F. App'x 524 (9th Cir. 2018) ........................................................................................... 9, 10

*Laub v. U.S. Dep't of Interior,*
    342 F.3d 1080 (9th Cir. 2003) .................................................................................................... 9

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n,*
    884 F.2d 504 (9th Cir. 1989) ..................................................................................................... 14

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................................................... 5, 7

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) ................................................................................................................... 27

*Mendia v. Garcia,*
    165 F. Supp. 3d 861 (N.D. Cal. 2016) .................................................................................... 27

*MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy,*
    861 F.3d 40 (2d Cir. 2017) ........................................................................................................ 7

*MLW Media LLC v. World Wrestling Entm't, Inc.,*
    __ F. Supp. 3d __, 2023 WL 1975241 (N.D. Cal. Feb. 13, 2023) ......................................... 20

*NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.,*
    2017 WL 6059299 (N.D. Cal. Dec. 7, 2017) ........................................................................... 25

*Ohio v. Am. Express Co.,*
    138 S. Ct. 2274 (2018) .................................................................................................. 17, 18, 24

*Omega Envt'l. Inc. v. Gilbarco, Inc.,*
    127 F.3d 1157 (9th Cir. 1997) ...................................................................................... 17, 18, 19

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.,*
    2017 WL 4310767 (N.D. Cal. Sept. 28, 2017) ....................................................................... 10

*Pacific Steel Grp. v. Com. Metals Co.,*
    2021 WL 2037961 (N.D. Cal. May 21, 2021) ................................................................... 18, 25

*Peterson v. Sutter Med. Found.,*
    615 F. Supp. 3d 1097 (N.D. Cal. 2022) .................................................................................... 6

*Plush Lounge Las Vegas LLC v. Hotspur Resorts Nevada Inc,*
    2008 WL 11338198 (C.D. Cal. Sept. 23, 2008) ...................................................................... 23

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.,*
    890 F.2d 139 (9th Cir. 1989) (en banc) ................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

*Rebel Oil Co., Inc. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995)..................................................................................... 23

*Reilly v. Apple Inc.*,
   578 F. Supp. 3d 1098 (N.D. Cal. 2022) ..................................................................... 15

*Renne v. Geary*,
   501 U.S. 312 (1991)...................................................................................................... 8

*Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*,
   381 F.3d 717 (7th Cir. 2004)................................................................................. 17, 19

*Retrophin, Inc. v. Questcor Pharms., Inc.*,
   41 F. Supp. 3d 906 (C.D. Cal. 2014) ........................................................................ 13

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
   471 F. Supp. 3d 981 (N.D. Cal. 2020) ...................................................................... 25

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987)...................................................................................... 25

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004)................................................................................... 6, 8

*Solinger v. A & M Records, Inc.*,
   586 F.2d 1304 (9th Cir. 1978).................................................................................... 11

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013)...................................................................................... 10

*Space Expl. Techs. Corp. v. Boeing Co.*,
   2006 WL 7136649 (C.D. Cal. 2006), *aff'd*, 281 F. App'x 769 (9th Cir. 2008)......................... 8

*Spectrum Sports, Inc. v. McQuillan*,
   506 U.S. 447 (1993) .............................................................................................. 20, 26

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
   782 F. Supp. 2d 1059 (E.D. Cal. 2011).................................................................... 26

*Stearns v. Select Comfort Retail Corp.*,
   2009 WL 1635931 (N.D. Cal. June 5, 2009) ........................................................... 16

*Streamcast Networks, Inc. v. Skype Techs., S.A.*,
   547 F. Supp. 2d 1086 (C.D. Cal. 2007).................................................................... 22

*Synopsys, Inc. v. ATopTech, Inc.*,
   2015 WL 4719048 (N.D. Cal. Aug. 7, 2015)............................................................ 14

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

*Tampa Elec. Co. v Nashville Coal Co.*,
  365 U.S. 320 (1961) ................................................................................................ 19

4

*Tanaka v. Univ. of S. Cal.*,
  252 F.3d 1059 (9th Cir. 2001) ............................................................................... 23

5

6

*Tawfilis, DDS v. Allergan, Inc.*,
  157 F. Supp. 3d 853 (C.D. Cal. 2015) .................................................................. 10

7

8

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
  875 F.2d 1369 (9th Cir. 1989) ............................................................................... 22

9

*In re Tourism Assessment Fee Litig.*,
  2009 WL 10185458 (S.D. Cal. Feb. 19, 2009) ....................................................... 6

10

11

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ............................................................................................. 5

12

13

*United Energy Trading, LLC v. PG&E*,
  200 F. Supp. 3d 1012 (N.D. Cal. 2016) ................................................................ 25

14

*United States v. E. I. du Pont de Nemours & Co.*,
  351 U.S. 377 (1956) ................................................................................................ 20

15

16

*United States v. Syufy Enters.*,
  903 F.2d 659 (9th Cir. 1990) ................................................................................. 25

17

18

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ............................................................................ 2, 5

19

*WildEarth Guardians v. U.S. Forest Serv.*,
  70 F.4th 1212 (9th Cir. 2023) .................................................................................. 5

20

21

*Wixen Music Publ'g, Inc. v. Triller, Inc.*,
  2022 WL 1601401 (C.D. Cal. Mar. 24, 2022) ........................................................ 9

22

23

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012) ............................................................................... 7, 18

24

*Zixiang Li v. Kerry*,
  710 F.3d 995 (9th Cir. 2013) ................................................................................... 9

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

15 U.S.C. § 1 ........................................................................................................................ 16

28 U.S.C. § 2201 .................................................................................................................. 27

**Other Authorities**

Federal Rule of Civil Procedure
    12(b)(1) ....................................................................................................................... 2, 5, 6, 8
    12(b)(6) ........................................................................................................................... 2, 3, 9

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust
    Principles and Their Application*, (2023 Cum. Supp.) ...................................................... 11, 18

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3   Plaintiff Fitness Technologies tries mightily to paint a picture of an antitrust violation by

4   Defendant ClubReady, but at its core, this case is nothing more than a contractual dispute between

5   Plaintiff's founder, Mr. Arp, his employer (non-party fitness franchisor Xponential Fitness

6   ("Xponential")), and ClubReady.  Indeed, Mr. Arp is intricately interlinked with all the parties at

7   issue.  He is the former Executive Chairman of ClubReady, he is the current Chief Technical Officer

8   of Xponential, and he founded Plaintiff, an entity that was created for litigation and has no

9   identifiable operations.

10   Mr. Arp has been involved in long standing disputes between Xponential and ClubReady,

11   in which Xponential has tried to end its relationship with ClubReady and terminate the parties'

12   2019 Master Vendor Agreement ("MVA").[1]   Failing in those previous attempts, Mr. Arp now

13   improperly seeks to effectively terminate the MVA through a new sham company, Fitness

14   Technologies, under the pretense of the federal antitrust laws.

15   Plaintiff specifically claims that it seeks to compete with ClubReady by selling a "fully-

16   integrated member management and licensed payment facilitator solution," which it has not yet

17   fully developed, ""boutique fitness studio franchises with fifty or more locations," but that

18

19   [1] *See, e.g.*, *Xponential Fitness, LLC, et al. v. ClubReady, LLC, et al.*, Case No. 30-2021-01234336-

20   CU-BC-NJC (Cal. Super. Ct. Jan. 12, 2022) (First amended complaint alleging various fraud and
contract claims against ClubReady arising from the MVA and the parties' relationship) ; *see also*

21   *Xponential Fitness, LLC, et al. v. ClubReady, LLC, et al.,* Case No. 30-2021-01234336-CU-BC-
NJC (Cal. Super. Ct. Feb. 23, 2022) (Declaration of Bryan Arp in Support of Plaintiffs' Motion for

22   Preliminary Injunction) ("If we switch to another provider . . . ClubReady will say we breached the
exclusivity clause in the Master Vendor Agreement.) (Declaration of Deepti Bansal ("Bansal

23   Decl."), Ex. A).  *See also infra*, pp. 4-5.  Fitness Technologies does not hide the fact that this
previous litigation history is driving ***this*** lawsuit; Plaintiff admits that Mr. Arp has been served

24   subpoenas in previous actions related to his involvement in Project Indigo (the name of the Fitness
Technologies development product) (Compl., ¶¶ 69, 71) and goes so far as to seek declaratory

25   action in this lawsuit for relief related to prior litigations, rather than based on conduct challenged
in this action under the antitrust laws. (Compl., ¶¶ 107-112). And, what is more, on the same day

26   that Fitness Technologies filed ***this suit***, Mr. Arp sued ClubReady in another suit, for violation of
California Unfair Competition Law, alleging the terms of his employment agreement with

27   ClubReady were unlawful.  *See Arp, et. al v. ClubReady, LLC, et. al*, Case No. CGC-23-607967
(Cal. Super. Ct. July 24, 2023) (Bansal Decl., Ex. B). Further, Fitness Technologies' counsel in this

28   lawsuit is the former counsel of Xponential in the earlier disputes. With certainty, Mr. Arp, Fitness
Technologies, and Xponential are all inextricably intertwined.

ClubReady's exclusivity agreement with Xponential and success in the market prevents it from doing so. (Compl. ¶¶ 4, 5, 25).   But this is not a genuine dispute between purported competitors, Fitness Technologies and ClubReady; rather, it is simply a front for Xponential's ongoing efforts to extricate itself from the agreement it signed with ClubReady in 2019. This last-ditch effort to improperly terminate the agreement in question should fare no better than Xponential's other baseless attempts at doing so.   And the antitrust laws should not be invoked as a pretense to accomplish what Plaintiff has otherwise been unsuccessful in accomplishing.

All this aside, however, Plaintiff's claims still fail.  The Complaint should be dismissed because it fails to state a plausible claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), as this motion explains in two parts.

Part I is made pursuant to Federal Rule of Civil Procedure 12(b)(1) and demonstrates that Fitness Technologies lacks Article III standing because it has not suffered an "injury in fact" traceable to ClubReady; Plaintiff's lack of presence in its alleged relevant market is due to its own unpreparedness and not ClubReady's alleged conduct. The Complaint alleges Plaintiff's pie-in-the-sky aspirations to provide member management and payment facilitator software to fitness studios, claiming that it "*is developing*" and "*is committed to providing*" such a solution. (Compl. ¶¶ 2, 4.) However, publicly available materials, which this court can consider on a 12(b)(1) motion, shows that Fitness Technologies is a company in name only.[2]  There is no public documentation confirm that it has employees (other than Mr. Arp), launched products, public licenses, or even a website. (Bansal Decl., Ex. C). Similarly, public sources do not show that it has customer interest, contracts, office space, or evidence it has any source of funding.  (Bansal Decl., Ex. D). Plaintiff does not allege otherwise.  Plaintiff has thus plausibly failed to establish that it is an entity that could enter the market but for ClubReady's conduct. Therefore, Plaintiff has not suffered an "injury in fact," let alone one that is traceable to ClubReady, and Fitness Technologies lacks Article III standing.

---

[2] "With a factual Rule 12(b)(1) attack, [a] court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment … It also need not presume the truthfulness of the plaintiffs' allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

Part II is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and demonstrates that even if Plaintiff were to have Article III standing, it nonetheless fails to allege the elements necessary to state an antitrust claim for several reasons. *First*, Plaintiff fails to plead facts sufficient to demonstrate antitrust standing. *Second*, Plaintiff's Sherman Act Section 1 claim and Section 2 attempted monopolization claims fail because Plaintiff has not pled a plausible product market or plausibly pled ClubReady has the requisite market share. *Third*, Plaintiff's Section 1 claim fails further because Plaintiff has not shown that ClubReady's alleged exclusive dealing arrangements unreasonably restrain trade. *Fourth*, Plaintiff's request for declaratory relief fails because there is no justiciable case or controversy between Fitness Technologies and ClubReady. For these reasons, Fitness Technologies fails to state a claim upon which relief may be granted, and its Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

### A.    ClubReady's Software Services.

The Complaint alleges that ClubReady was founded in 2009 and is a "provider of full-suite studio fitness and wellness club management software and services." (Compl. ¶ 34.)  ClubReady provides billing, scheduling, and other software services—including solutions for member experience, staff, sales, payment, reporting, and analytics management—for thousands of fitness clubs. Like other software providers in the franchise fitness club industry, such as Mindbody and Zenoti (*id*. ¶ 25), ClubReady's member management software "encompasses class scheduling and reservations, electronic membership agreements and waivers, and staff management, along with other features such as fitness performance data, integrated text messages and email services, and data and analytics." (*Id*.)  Mr. Arp was the Executive Chairman of ClubReady from 2015-2018. (Bansal Decl., Exs. A, E).

### B.    ClubReady and Xponential Begin Their Relationship.

Xponential Fitness, Inc. ("Xponential") is the largest global franchise group of boutique fitness brands and is ClubReady's largest customer. (Compl. ¶¶ 38, 46).  In 2018, Mr. Arp, the founder of Fitness Technologies, became the Chief Technical Officer of Xponential, a position he still holds. (Bansal Decl., Ex. A).

On December 31, 2019, ClubReady and Xponential executed the MVA. (Compl. ¶ 54). Under the terms of the MVA, each of Xponential's brands must exclusively use ClubReady's software solution throughout the term of the agreement. (*Id.* ¶¶ 54, 58). The MVA has a term of five years, which is set to expire on December 31, 2024. (*Id.*) Plaintiff alleges that this "single contract" forecloses "40% percent of enterprise-operated studios." (*Id.* ¶ 58). Mr. Arp, as the Chief Technical Officer of Xponential, was well aware of these terms. (Bansal Decl., Ex. F) (listing Mr. Arp as Xponential's point of contact in the Development Services Agreement that ClubReady and Xponential which was concurrently executed with the MVA).

## C.   Xponential Seeks to Terminate its Relationship with ClubReady and Mr. Arp Founds Fitness Technologies.

In January 2021, Xponential began to complain of ClubReady's alleged performance deficiencies under the MVA. (Compl. ¶ 46). The Complaint notably does not allege that Xponential raised any antitrust concerns to ClubReady then or at any time before filing this lawsuit.

Also in 2021, Mr. Arp founded Fitness Technologies, and started "developing" a product under the code name Project Indigo, to allegedly compete with ClubReady. (*Id.* ¶¶ 4, 71, 74).[3] The Complaint does not allege that Plaintiff has any employees other than Mr. Arp. (*Id.* ¶¶ 4, 76); (*see also* Bansal Decl., Ex. G). Although Fitness Technologies alleges it "is committed to providing" a software solution to compete with ClubReady's product, Plaintiff has never released a software solution to serve customers in the alleged relevant market (nor has it engaged in any other business). (Compl. ¶¶ 2, 4. 74). Plaintiff has no website, no marketing, no public point of contact, no customers or and no office. The address Plaintiff provided to the California Secretary of State is Mr. Arp's residential address. (Bansal Decl., Ex. D). Plaintiff does not allege that any customers have expressed interest in its product.

## D.   Mr. Arp Begins His Litigation Campaign Against ClubReady.

In December 2021, Xponential sued ClubReady for breach of contract and under various theories of fraud, and shortly moved for a preliminary injunction with declarations submitted by

---

[3] Plaintiff waffles between alleging that it is committed to developing (Compl. ¶ 4), is developing (*id.* ¶¶ 9, 79), and has developed (*id.* ¶ 74) a product that competes with ClubReady. Thus, the status of Plaintiff's purported product is wholly unclear, other than it is nowhere close to market.

Mr. Arp himself actually (and paradoxically) trying to compel ClubReady to perform *more* work for Xponential. (Bansal Decl. Ex. J). On April 4, 2022, the trial court in that case denied Xponential's motion for a mandatory preliminary injunction and ordered the parties to proceed to arbitration. *See Xponential Fitness, LLC v. ClubReady, LLC*, Case No. 30-2021-01234336, Dkt. No. 153, (Cal. Super. Ct. Apr. 4, 2022).

Mr. Arp remained undeterred. On July 24, 2023, Fitness Technologies, brought this action into this Court, now asserting the MVA violated the antitrust laws. On that same day, Mr. Arp and a different company of his, Bryan Arp Agency, LLC, initiated brought another lawsuit against ClubReady in San Francisco Superior Court. (Bansal Decl. Ex. B). There, he seeks to void his ongoing confidentiality obligations to ClubReady under his prior Consulting and Executive Chairman Agreements with ClubReady, and yet another declaration that he is allegedly not misappropriating ClubReady's trade secrets. (*Id.*)

## ARGUMENT

### I. PLAINTIFF LACKS ARTICLE III STANDING

Article III of the United States Constitution limits federal court jurisdiction to actual cases or controversies. *WildEarth Guardians v. U.S. Forest Serv.*, 70 F.4th 1212, 1215 (9th Cir. 2023). A challenge to a plaintiff's constitutional standing is properly raised under a motion to dismiss pursuant to Rule 12(b)(1) because such a challenge concerns a federal court's subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In seeking to invoke a court's jurisdiction, plaintiffs bear the burden of proving that jurisdiction exists. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). It must meet this burden "for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (citations omitted).

Standing requires that the plaintiff suffered an "injury in fact" that is "concrete and particularized" which "must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 n.1 (1992). A motion to dismiss made under Rule 12(b)(1) may be either a facial attack challenging jurisdiction based on the sufficiency of the

pleadings or a factual attack on the truth of the allegations.[4]  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  On the latter, the court may consider evidence outside of the complaint, and the court need not presume the truthfulness of the plaintiff's allegations.  *Id.*  Once the defendant has presented evidence disputing the jurisdictional allegations in the complaint, the plaintiff has the burden to "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."  *Peterson v. Sutter Med. Found.*, 615 F. Supp. 3d 1097, 1106 (N.D. Cal. 2022).  This Motion is a factual attack to Plaintiff's constitutional standing.

Plaintiff asserts four causes of action, alleging that ClubReady's conduct, such as its exclusive dealing provisions in its vendor agreements and acquisitions of software companies that develop technologies related to its products, are anticompetitive because they exclude Plaintiff's ability to deploy its own fully integrated member management and payment facilitation solution. (Compl. ¶¶ 6-8).  Because Plaintiff alleges the same injuries for each claim, this Motion challenges Plaintiff's constitutional standing as to each claim in a single analysis.  *See In re Tourism Assessment Fee Litig.*, 2009 WL 10185458, at *7 (S.D. Cal. Feb. 19, 2009) ("All the claims, however, challenge the constitutionality of the Program, and they all allege precisely the same injuries to Plaintiffs by each Defendant. As such, a claim-by-claim discussion of Plaintiffs' constitutional standing is unnecessary.").

### A.    Plaintiff Has Not Suffered an Actual Injury in Fact

The Complaint and publicly-available information confirm that Plaintiff has not developed any product, let alone a product to compete with ClubReady in the alleged market. Absent the preparedness or concrete plans to actually compete with ClubReady, Plaintiff's lack of presence in the alleged market is not an "actual or imminent" injury-in-fact traceable to ClubReady's alleged anticompetitive conduct, but rather a situation of its own making.  Said differently, because Fitness Technologies is not ready to enter the market, ClubReady is not a but-for cause of its alleged

---

[4] In this Court, and in courts in other circuits, a factual challenge under Rule 12(b)(1) may be made prior to service of an answer. *See, e.g.*, *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) ("Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint.").

exclusion.  See *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 196 (N.D. Cal. 2015) (plaintiff had no standing to pursue price fixing claims against fertility clinics and egg donation agencies where it was just a "mere possibility" that she would donate eggs in the future).  Therefore, Fitness Technologies lacks Article III standing.  *See Lujan*, 504 U.S. at 564 ("'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." (emphasis in original)).

The Complaint provides almost no information about Fitness Technologies: it points to no employees other than Mr. Arp, any public source of secured financing, product plans, outreach to customers, or any steps that it has taken to enter the market.  The Complaint says that Fitness Technologies has developed a competing product with "state-of-the-art" features but says nothing about those features, the product, or whether it even works.  (Compl. ¶ 75).  Indeed, the Complaint admits that the product is not even in "beta testing." (*Id.* ¶ 9).

Public documentation also does not show Plaintiff is prepared to enter the market.  Indeed, as summarized above, public sources do not establish that Fitness Technologies is developing or has developed a product, tried to find employees, secure funding, market its products, or in any way enter the market, and the Complaint contains no allegations otherwise.  The founder of Plaintiff, Mr. Arp, has admitted that Plaintiff is not in the market and that it has not launched a product.  (Bansal Decl, Ex. I, at ¶ 13).  Plaintiff has no office, its corporate registration address is Mr. Arp's residential address.  *See id.*, Ex. D.  There are no public records showing any funding sources, no public licenses, or even a website.

Courts have found that a "recently formed compan[y] that wish[es] to . . . sell" products in the alleged market has not suffered an actual injury where it cannot demonstrate it was "meaningfully or adequately prepared" to do so.  *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 173 (3d Cir. 2001); *MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy*, 861 F.3d 40, 47–48 (2d Cir. 2017) ("initial studies of the viability" of opening a new casino without "any concrete plans" render injury "too remote and conjectural to support Article III standing"); *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 302 (3d Cir. 2012) (holding "[v]ague" assertions of desire, "without

any descriptions of concrete plans" insufficient to establish injury of market exclusion); *Energy Transp. Grp., Inc. v. Mar. Admin.*, 956 F.2d 1206, 1215 (D.C. Cir. 1992) ("potential harm is too speculative" where plaintiff was "involved in negotiations" to enter market but had "shown little evidence that such entry is probable"); *see also Space Expl. Techs. Corp. v. Boeing Co.*, 2006 WL 7136649, at *5–6 (C.D. Cal. 2006), *aff'd*, 281 F. App'x 769 (9th Cir. 2008) ("*SpaceX*") (holding that a new entrant in the relevant market did not have standing to bring its antitrust claims because it did not compete in that market).

*SpaceX* is illustrative. There, the plaintiff alleged that the defendant had engaged in anticompetitive conduct in the Evolved Expendable Launch Vehicles ("EELV") market. *Id.* at *5. It alleged that it was "a potential competitor" in the market, had already invested millions of dollars in developing a vehicle to launch, and had a contract with a U.S. government customer. *Id.* at *6. The court rejected these arguments and held that plaintiff failed "to articulate an injury sufficient to satisfy constitutional standing requirements" because it lacked the capability to launch an EELV vehicle and "could not compete" in the alleged market. *Id.* at *5–6.

Here, Plaintiff's own characterization of its own product development is not even as far along as the product development in *Space X*. Plaintiff does not allege what, if any, investments it has made into developing its allegedly competing product. It does not allege that it has communicated with any customers or that any customers have expressed interest in their product, let alone that it has executed any contracts.

On this record, Plaintiff lacks any basis to argue that it is meaningfully prepared to enter the alleged market. Accordingly, Plaintiff has not suffered an injury-in-fact that is traceable to the challenged conduct. Plaintiff lacks constitutional standing and its claims should be dismissed under Rule 12(b)(1).

**B.      ClubReady Requests Limited Jurisdictional Discovery Relating to Plaintiff's Standing if Plaintiff Opposes this 12(b)(1) Motion with its Own Evidence**

Because this Motion presents a factual challenge to Plaintiff's constitutional standing, the allegations in the Complaint are not entitled to the presumption of truth. *See Meyer*, 373 F.3d at 1039. On the basis of the record now before the Court, the Complaint should be dismissed. *Renne*

1   *v. Geary*, 501 U.S. 312, 316 (1991) (courts "presume that [they] lack jurisdiction unless the contrary

2   appears affirmatively from the record" (cleaned up)).

3       Should Plaintiff oppose ClubReady's Motion with its own evidence, ClubReady requests

4   limited discovery to test Plaintiff's jurisdictional assertions. *See Laub v. U.S. Dep't of Interior*, 342

5   F.3d 1080, 1093 (9th Cir. 2003) (reversing district court's denial of jurisdictional discovery because

6   "discovery would be useful to establish federal subject matter jurisdiction"); *see also Wixen Music*

7   *Publ'g, Inc. v. Triller, Inc.*, 2022 WL 1601401, at *4 (C.D. Cal. Mar. 24, 2022) (permitting

8   standing-related discovery).

9   **II.      PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER RULE 12(B)(6)**

10      Even assuming Plaintiff has constitutional standing (it does not), the Complaint is defective

11  for additional reasons and should be dismissed for failure to state a claim under Rule 12(b)(6).

12  First, Plaintiff has failed to plead facts sufficient to show that it has antitrust standing.  Second,

13  Plaintiff's Sherman Act Section 1 claim and Section 2 monopolization claims fail because Plaintiff

14  has not pled a plausible product market.  Third, Plaintiff's Section 1 claim additionally fails because

15  it has not shown that ClubReady's exclusive dealing arrangements unreasonably restrain trade.

16  And fourth, Plaintiff's request for declaratory relief cannot withstand dismissal because there is no

17  justifiable case or controversy between Fitness Technologies and ClubReady.

18      A complaint must be dismissed under Rule 12(b)(6) if it lacks a cognizable legal theory or

19  fails to set forth sufficient supporting factual allegations. *Zixiang Li v. Kerry*, 710 F.3d 995, 999

20  (9th Cir. 2013).  Supporting allegations are credited only if they are "plausible" and "raise a right

21  to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

22  Although courts generally accept factual allegations and construe the pleadings in the light most

23  favorable to the plaintiff, they do not credit "legal conclusions" or "[t]hreadbare recitals of the

24  elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556

25  U.S. 662, 678 (2009).

26      Antitrust complaints uniquely burden defendants, and courts are therefore mindful that

27  "proceeding to antitrust discovery can be expensive." *Kelsey K. v. NFL Enters., LLC*, 757 F. App'x

28  524, 527 (9th Cir. 2018) (quoting *Twombly*, 550 U.S. at 558).  As such, a district court retains "the

1  power to insist upon some specificity in pleading before allowing a potentially massive factual

2  controversy to proceed." *Id.* (quoting *Twombly*, 550 U.S. at 558).

3  ## A.  Plaintiff Lacks Antitrust Standing

4  ### 1.  Plaintiff is not prepared to enter the market.

5  Distinct from constitutional standing, antitrust standing is a threshold element of every

6  antitrust claim.  *See Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 911 (N.D. Cal. 2019) ("a

7  plaintiff who satisfies constitutional standing requirements is not necessarily a proper party to bring

8  a private antitrust action.").  To survive dismissal of its claims, a private antitrust plaintiff must first

9  establish this "essential" element otherwise all its claims fail. *R.C. Dick Geothermal Corp. v.*

10  *Thermogenics, Inc.*, 890 F.2d 139, 145 (9th Cir. 1989) (en banc).  To establish antitrust standing, a

11  plaintiff must show it that suffered an "antitrust injury," which is "injury of the type the antitrust

12  laws were intended to prevent[]" that "flows from that which makes the defendants' acts unlawful."

13  *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (quoting *Brunswick Corp. v. Pueblo Bowl-*

14  *O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).  The Ninth Circuit also requires that the plaintiff "be a

15  participant in the same market" as the defendant.  *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 540

16  (9th Cir. 1987); *see also Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 2017 WL 4310767, at *4

17  (N.D. Cal. Sept. 28, 2017) ("courts are mindful that the law was designed for 'the protection of

18  competition not competitors.'").

19  A non-participant, such as an alleged potential competitor, can only demonstrate that it has

20  antitrust standing in limited circumstances.  *See Hecht v. Pro-Football, Inc.*, 570 F.2d 982, 994

21  (D.C. Cir. 1977) ("[E]very business must have started somewhere . . . [b]ut it does not follow from

22  this that [the starting phase] is business, at least not for the purposes of the antitrust laws.").  A

23  potential competitor can establish that it has suffered antitrust injury only if it "can show a genuine

24  intent to enter the market and a preparedness to do so."  *Tawfilis, DDS v. Allergan, Inc.*, 157 F.

25  Supp. 3d 853, 866 (C.D. Cal. 2015) (quoting *Bubar v. Ampco Foods, Inc.*, 752 F.2d 445, 450 (9th

26  Cir. 1985)); *see also In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1465

27  (9th Cir. 1993) (no standing where plaintiff "had not taken 'substantial demonstrable steps' to enter

28  the market").  Courts adopt this stringent standard because otherwise "plaintiffs in the hundreds

could say they would have entered. . . . [E]ven if we could identify the most likely entrants among the claimants, we may doubt that they would have prospered when most new businesses fail anyway." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶ 349a (2023 Cum. Supp.).

In determining whether a potential competitor has sufficient intent and preparedness to enter the market, courts in the Ninth Circuit consider a "combination" of the following elements: (1) the background and experience of the competitor; (2) affirmative action by the competitor to engage in the proposed business; (3) the ability of the competitor to finance the business; and (4) the consummation of contracts by the competitor. *Cyntegra, Inc. v. Idexx Labs., Inc.*, 520 F. Supp. 2d 1199, 1206 (C.D. Cal. 2007) (citing *Solinger v. A & M Records, Inc.,* 586 F.2d 1304, 1309–10 (9th Cir. 1978)).

Here, Plaintiff has not adequately alleged intent and preparedness to enter the market – indeed, it has not plausibly pled any of the four *Solinger* factors – and thus it lacks antitrust standing.

<u>Background and Experience</u>: The only allegations concerning Plaintiff's capability and experience to compete in the market are about its founder, Mr. Arp. (Compl. ¶ 4) (alleging that Mr. Arp is "an acknowledged and highly regarded expert in the field and has extensive experience developing technological products"), (*id.* ¶ 72) (noting that Mr. Arp has "decades of experience"). Plaintiff does not specify what this "extensive experience" is and even if Mr. Arp has technical experience, there are no allegations that Mr. Arp has the business expertise to fund, market, and launch a product. Absent also are any allegations that Mr. Arp knows how to manage or run a company.

Such allegations are insufficient to demonstrate antitrust standing because, as Plaintiff itself alleges, one man does not a company make. Indeed, the Complaint itself notes that to compete in its proposed Relevant Market, one needs to "employ highly skilled individuals." (*id.* ¶ 42). In other words, Mr. Arp is not enough. But Plaintiff has not alleged whether Fitness Technologies has ***any other personnel***, for instance, technical staff who is developing its software solution. While it claims it cannot hire employees from ClubReady, it does not allege why it cannot hire employees from other competitors in the market, such as MindBody and Zenoti.  It does not even allege

1   whether it has attempted to hire any staff or otherwise been prevented from doing so.  Plaintiff has

2   also failed to allege that it has previously developed products that could compete with ClubReady's

3   alleged fully integrated product.  It has not even alleged that is has any experience developing

4   member management software *or* licensed payment facilitation solutions.

5       Affirmative Steps: Nowhere in its Complaint does Plaintiff directly state what steps it has

6   taken to engage in the proposed business.  Plaintiff vacillates between alleging that it is committed

7   to developing (Compl. ¶ 4), is developing and testing (*id.* ¶¶ 9, 79), and has developed (*id.* ¶ 74) a

8   product that competes with ClubReady.  It is not clear which the Court is to believe – does the

9   product exist? The answer is not clear. Indeed, Fitness Technologies seems to admit that its so-

10  called product is not even in "beta testing."  (*Id.* ¶ 9).

11      But in any event, having a product prototype is not enough to compete.  Plaintiff admits

12  this, noting that getting to market is an "arduous process." (*id.* ¶ 40). Nowhere does Plaintiff

13  describe whether it has taken any steps, outside of developing a product, along this process. For

14  example, Plaintiff references licensing requirements that could take up to five years (*id.*) but says

15  nothing about whether it has applied for such a license or how many years remain on its application.

16  Similarly, Plaintiff provides no allegations discussing Fitness Technologies' research and

17  development plans or marketing and commercialization plans – let alone any steps it has taken to

18  execute those plans.

19      Financial Support: The Complaint admits that designing a competing solution requires a

20  substantial up-front capital investment. (*Id.* ¶ 42). The Complaint does not describe whether

21  Plaintiff has secured this substantial investment or indeed, whether it has secured any funding to

22  develop and bring to market a competitor to ClubReady's product.

23      Consummation of Contracts: The Complaint does not allege that Fitness Technologies has

24  reached out to any customers, engaged in any marketing efforts, or consummated any customer

25  contracts.  In fact, it admits that it does not have the necessary contracts to operate.  (*Id.* ¶ 77).  It

26  also does not allege that any customer has expressed switching from ClubReady to Fitness

27  Technologies.

28      While Fitness Technologies claims that it cannot recruit customers from ClubReady, it does

not explain why it cannot compete for customers from MindBody and Zenoti – customers that Plaintiff asserts make up roughly 40% of the market and who would allegedly appreciate having an integrated solution such as the one that Fitness Technologies is allegedly developing.

Courts find that plaintiffs such as Fitness Technologies—without the requisite experience, affirmative steps, customers, and funding—lack antitrust standing. *See, e.g.*, *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d at 1465–66 (concluding plaintiff's efforts to enter an industry were "pie in the sky" where plaintiff "had not taken 'substantial demonstrable steps' to enter the market," "had no experience," "no demonstrated ability to raise the money to enter the market," "had no product," and had only "talked" and "sen[t] some letters" to potential customers); *Bubar*, 752 F.2d at 453 ("Because the corporation was only a potential competitor, the speculative nature of the harm is increased because of the uncertainty that it would ever have been financially able to become a competitor."); *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 460 (9th Cir. 2021) (affirming dismissal of horizontal price-fixing claims because the plaintiff did not adequately allege antitrust standing due to its failure to allege with sufficient certainty that it would have purchased the product); *Hecht*, 570 F.2d at 994 ("[C]ourts have drawn the line at the point where promotion transcends the level of hopes, desires, and expectations and reaches a certain stage of maturity and concreteness, a stage where it is accompanied by certain indicia of ultimate success."). Plaintiff's deficient allegations are in stark contrast to cases where plaintiffs have adequately pled antitrust standing by establishing their preparedness to enter the market. *See, e.g.*, *Retrophin, Inc. v. Questcor Pharms., Inc.*, 41 F. Supp. 3d 906, 915 (C.D. Cal. 2014) (holding that plaintiff had sufficiently alleged intent and preparedness to enter the market for developing particular therapeutic drugs where the complaint alleged plaintiff's "expertise as a biopharmaceutical company[,]" that it "was on the verge of signing an agreement with [another manufacturer,]" and that it was "preparing a plan to obtain regulatory approvals" and "to conduct clinical trials to obtain FDA approval.")

In sum, Plaintiff cannot show it has a genuine intent and preparedness to enter the alleged market, and therefore cannot show that it has suffered an antitrust injury as a result of ClubReady's alleged conduct. The Court should dismiss Plaintiff's antitrust claims.

**2.      Plaintiff has not alleged harm to competition.**

Plaintiff further lacks antitrust standing because the Complaint does not plausibly plead harm to competition.  Rather, Plaintiff pleads harm only to itself, Fitness Technologies, a purported competitor to ClubReady, and harms to ClubReady's largest customer, Xponential. (Compl. ¶ 38).

Alleged harm to a single competitor, without plausible allegations of harm to competition, does not suffice to establish antitrust standing.  *See Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) ("removal of one or a few competitors need not equate with injury to competition"); *Synopsys, Inc. v. ATopTech, Inc.*, 2015 WL 4719048, at *6 (N.D. Cal. Aug. 7, 2015) (holding that plaintiff had failed to establish antitrust injury on claims based on exclusivity provisions in a licensing agreement because "ATopTech has not shown the EULA harms competition, and, instead, has only alleged harm to itself."); *Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, 2012 WL 3877783, at *10 (N.D. Cal. Sept. 6, 2012) ("Wowza thus has failed to allege more than the sweeping legal conclusion that Adobe's purported anticompetitive actions have caused injury to competition in the relevant market, as required to survive a motion to dismiss.") (cleaned up).

The Complaint primarily contains allegations of specific injury to Plaintiff and Plaintiff's founder, Mr. Arp: "ClubReady's anticompetitive conduct has harmed Fitness Technologies by erecting a barrier to engaging with customers and beta testing its solution: any prospective customer with a long-term exclusive agreement risks a breach-of-contract suit." (Compl. ¶ 9). It further alleges that Fitness Technologies has been "blocked from engaging with potential customers," (*id.* ¶ 75); "forced . . . to incur unnecessary and inefficient development costs," (*id.* ¶ 76), is "[un]able to freely recruit talent necessary to staff its startup," (*id.*); "ClubReady has targeted some of its anticompetitive conduct specifically at Fitness Technologies and founder Bryan Arp," (*id.* ¶ 80); "ClubReady has also sought to intimidate Fitness Technologies' founder" (*id.* ¶ 70); and "[n]ot only has Fitness Technologies been forestalled from pursuing the opportunity to hire interested professionals, but ClubReady has accused Mr. Arp of improperly using or disclosing ClubReady's trade secrets even though Mr. Arp has not improperly acquired or disclosed any trade secrets of

1   ClubReady." (*id*. ¶ 10).[5]

2       Absent are plausible allegations reflecting any "competition-reducing" effect of

3   ClubReady's alleged conduct. *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990).

4   Rather, in rote fashion, Plaintiff makes vague references to customers and competition as a whole,

5   but offers no support for those allegations.  For example, Plaintiff states with aplomb, but with no

6   support, that ***other*** Enterprise-Level Fitness Boutiques have long term contracts with exclusivity

7   terms and that "innovators" have been excluded from the relevant market.  (*Id.* ¶¶ 59, 78).  Plaintiff

8   does not offer any other details, such as the identity of these other innovators, when they signed

9   exclusivity agreements, the terms of those provisions, and when they were excluded.  Similarly, it

10  states that Fitness Technologies is one of the "primary victims" of ClubReady's conduct but

11  nowhere describes the other victims.  And while it claims vaguely that ClubReady's customers are

12  deprived of Fitness Technologies' "state-of-the-art" services (*id.* ¶¶ 75, 79), it admits that there are

13  customers in the market that Fitness Technologies could compete for if it had a product ready for

14  operations. (*id.* ¶ 34).

15      To the extent that Fitness Technologies pleads purported harm to customers, it focuses on

16  one single aggrieved customer, Mr. Arp's employer—Xponential.  *See, e.g.*, (*id.* ¶ 38) (ClubReady

17  allegedly "disrupted Xponential's business"), (*id.* ¶ 48) ("Xponential's experience with

18  ClubReady's software has not changed"), (*id.* ¶ 61) ("ClubReady's restrictive course of dealing that

19  treats all of Xponential's brands the same leaves Xponential without that option.").  But "[h]arm to

20  a single customer" is not harm to competition as a whole sufficient to confer standing.

21  *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1141 (9th Cir. 2022) (affirming dismissal of

22  complaint with prejudice where plaintiff alleged only that Google mistreated it as a Google

23  customer); *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1110 (N.D. Cal. 2022) ("Plaintiff's theory

24  of harm is that *his* app was rejected from the App Store notwithstanding *his* investment in Konverti.

25  . . . This theory fails to connect his supposed injury to competition generally.") (emphasis in

26

---

27  [5] Despite that Plaintiff has no launched product (Compl. ¶ 4), it claims that it "**has lost** and will
28  lose **millions of dollars in sales and profits** from within the Relevant Market that it would generate but for ClubReady's behavior." (*Id.* ¶ 96) (emphasis added).

original); *Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910, at *13–14 (N.D. Cal. Nov. 30, 2021) (finding no antitrust injury because the operative complaint's allegations were "either confined to specific harms experienced by Plaintiffs or a small group of competitors, rather than harm to the market" and there were no allegations of "harm generally to the market of transactions for apps across a relevant market.'").

And, of course, Plaintiff's focus on ***one customer***, rather than customers as a whole, underscores that Fitness Technologies is raising (Xponential's) contractual issue, not an antitrust one. This is an additional reason to dismiss Plaintiff's claims. *See Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *13 (N.D. Cal. June 5, 2009) ("Plaintiffs' attempt to wedge an antitrust claim into a case grounded on alleged common-law tort and breach of contract claims will be dismissed, without leave to amend"); *see Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 997 (9th Cir. 2020) ("we note the persuasive policy arguments of several academics and practitioners …who have expressed caution about using the antitrust laws to remedy what are essentially contractual disputes between private parties engaged in the pursuit of technological innovation.").[6]

Plaintiff's failure to allege harm to competition requires dismissal of all of Plaintiff's antitrust claims due to lack of antitrust standing.

## B.    Plaintiff's Section 1 Claim Fails

Plaintiff claims that ClubReady's vertical agreements with its customers, which contain exclusivity provisions, constitute unlawful restraints of trade under Section 1 of the Sherman Act. To prevail on its Section 1 claim, Plaintiff must establish: (1) a "contract, combination . . . or conspiracy," (2) that unreasonably restrains trade, and (3) affects interstate commerce. 15 U.S.C. §

---

[6] Plaintiff does not allege at any point that ClubReady unlawfully coerced Xponential into executing the vendor agreement. Nor could it; per Plaintiff's allegations, Xponential controls 40% of the market and is ClubReady's largest customer. (Compl., ¶¶ 38, 58, 77, 85). This is not the case where small companies were forced into unfavorable contracts; Xponential had plenty of leverage when negotiating the agreement. *See Barry Wright Corp. v. ITT Grinnell Corp.*, 724 F.2d 227, 237–38 (1st Cir. 1983) ("Grinnell [customer] is not a small firm that Pacific [defendant] could likely bully into accepting a contract that might foreclose new competition. . . . Had Grinnell believed that the long-term nature of the contracts significantly interfered with new entry, or inhibited the development of a new source of supply, it is difficult to understand why it would have sought the agreements.").

1; *see also Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283 (2018) (clarifying that Section 1 prohibits only those contracts that constitute an undue restraint on trade). Plaintiff's Section 1 claim fails because Plaintiff has not pled an unreasonable restraint on trade.

### 1. Plaintiff Has Not Plausibly Pled that the MVA Unreasonably Restrains Trade

Plaintiff claims that ClubReady violated Section 1 because it "has engaged in exclusive dealing and entered into" agreements with Xponential and other customers which "require that an enterprise use only ClubReady's solution for certain services a period of up to five years." (Compl. ¶¶ 53-54, 84). Plaintiff argues that such agreements lock up 40% of the customers in their alleged market and therefore it cannot compete. (*Id.* ¶¶ 57, 77, 85).[7] Plaintiff's argument fails for two reasons. First, exclusivity agreements have well established procompetitive benefits such that courts often find them to be presumptively legal. *Republic Tobacco Co. v. N. Atl. Trading Co.*, *Inc.*, 381 F.3d 717, 736 (7th Cir. 2004) ("Unlike horizontal agreements between competitors, vertical exclusive distributorships (like in this case) are presumptively legal. Rather than condemning exclusive dealing, courts often approve them because of their procompetitive benefits.") (citations omitted). Plaintiff has not plausibly pled why the agreements at issue here should be treated differently. Second, Plaintiff's alleged 40% foreclosure is not "substantial foreclosure" in this case where under Plaintiff's own argument, ***60% of the market is accessible to them***, and would actively welcome a solution akin to the one that Fitness Technologies claims to be developing. That is, the allegedly foreclosed 40% "considerably overstates the size of foreclosure and its likely anticompetitive effect." *Omega Envt'l. Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997) (citing *Barry Wright*, 724 F.2d at 237).

---

[7] There are a number of contradictions in Plaintiff's market share and foreclosure allegations. In some places, Plaintiff alleges that ClubReady has 60% of the Relevant Market, (Compl. ¶¶ 6, 26, 33, 34, 52) but in other places, it alleges that purported competitors, like Fitness Technologies, are only substantially foreclosed from 40% of the Relevant Market (*id.* ¶¶ 58, 77, 85). It also alleges that Xponential makes up 40% of the Relevant Market (*Id.* ¶ 58.) This either means that Fitness Technologies is only claiming it is foreclosed from one of ClubReady's customers –Xponential – and not the remaining 20% or that ClubReady only has 40% market share. If the former, that is further support that Plaintiff has not pled a harm to competition as a whole (it's focused on one consumer), *see supra*, pp. 14-16. If the latter, then Plaintiff has not alleged that ClubReady has sufficient market share to plead its Section 2 claims. *See infra*, pp. 23-24.

It is axiomatic that "[v]ertical restraints often pose no risk to competition." *Am. Express*, 138 S. Ct. at 2285 n.7. There are "well-recognized economic benefits to exclusive dealing arrangements, including the enhancement of interbrand competition." *Omega Envtl.*, 127 F.3d at 1162. Here, Plaintiff simply concludes there are no procompetitive benefits to the alleged agreement (Compl. ¶¶ 61, 89), but provide little support for its conclusion. This fails well-established pleading standards. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."). The Complaint simply states that if the restrictions were procompetitive, they would account for Xponential's changing needs over time or have less restrictive provisions (Compl. ¶¶ 61, 89), but it wholly fails to account for the legitimate purpose of exclusivity provisions in the first place – such as that they are "highly efficient—to assure supply, price stability, outlets, investment, best efforts or the like." *ZF Meritor*, 696 F.3d at 270.

Further, courts have found that exclusive dealing agreements do not foreclose competition where a plaintiff has other alternative to compete within the alleged market. *See Omega Envtl.*, 127 F.3d at 1163 (finding no substantial foreclosure where Defendant foreclosed roughly 38% of the relevant market for sales in part because of there were "potential alternative sources of distribution" which were "relevant to assessing market foreclosure."); *see* 2A Areeda ¶ 570b1 (foreclosure calculation "includes the full range of selling opportunities reasonably open to rivals, namely, all the product and geographic sales they may readily compete for, using easily convertible plants and marketing organizations"); *see also Pacific Steel Grp. v. Com. Metals Co.*, 2021 WL 2037961, at *9 (N.D. Cal. May 21, 2021) (dismissing restraint of trade claim where "neither [plaintiff's] allegations, nor reasonable inferences from them, plausibly allege that" plaintiff had no other "viable means of competing in the market" and the allegations conceded that plaintiff had alternative ways to compete).

While 40% foreclosure may in some instances be found to be substantial, Plaintiff does not plausibly plead that it is substantial foreclosure here where it admits that it has access to 60% of the alleged relevant market and claims that 60% wants an alternative solution like the one Fitness Technologies purports to be developing. (Compl. ¶ 58) ("With a single contract, ClubReady

foreclosed any new entrant from at least 40% percent of enterprise-operated studios"); (*id.* ¶ 77) ("ClubReady has foreclosed a substantial portion of the Relevant Market—preventing at least 40% of Enterprise-Level Fitness Boutique locations from partnering with Fitness Technologies to test its product, collaborating on technological transitioning issues, or committing to a contract."). Indeed, Plaintiff repeatedly states that other companies (e.g., Zenoti and MindBody) participate in the Relevant Market and want an alternative "integrated" solution, such as the one Plaintiff is allegedly developing.  (*Id.* ¶¶ 4, 25). Plaintiff is silent as to why access to these customers is insufficient for it to compete. Instead, Plaintiff wants to strip ClubReady of its largest customer, the alleged biggest customer in the market, which ClubReady has diligently serviced over the past four years, and take it for itself.  (*Id.* ¶¶ 38, 46).  But the antitrust laws "were not designed to equip the plaintiffs' hypothetical competition with [defendant's] legitimate competitive advantage." *Omega Envtl*, 127 F.3d at 1163. Plaintiff is free to compete on its own merits, for the 40% of the market that it alleges it can access. As such, Plaintiff's allegations of 40% foreclosure "considerably overstate" any anticompetitive impact. *Id.* at 1162 (citing *Barry Wright*, 724 F.2d at 237) (finding that foreclosure of half the relevant market considerably overstates any likely anticompetitive effect.).

In addition, Plaintiff's claims fail because it failed to plead a properly defined relevant market, as discussed below. *Infra*, pp. 23-24.  *Tampa Elec. Co. v Nashville Coal Co.*, 365 U.S. 320, 329 (1961) ("[T]he relevant market is the prime factor in relation to which the ultimate question, whether the contract forecloses competition in a substantial share of the line of commerce involved."); *Eastman v. Quest Diagnostics Inc*., 2016 WL 1640465, at *8 (N.D. Cal. Apr. 26, 2016) (claim failed when plaintiff could not allege "sufficient details about the dynamics of the relevant market"); *Republic Tobacco*, 381 F.3d at 738 (exclusive dealing claims failed where plaintiff could not establish a proper market).[8]

---

[8] To the extent that Plaintiff's Section 2 claims are also based on ClubReady's alleged exclusive dealing arrangements, (Compl. ¶¶ 93, 101), the Court may also dismiss them on the same grounds that Plaintiff has failed to a state a claim under Section 1.  *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 998 (9th Cir. 2023) ("if a court finds that the conduct in question is not anticompetitive under § 1, the court need not separately analyze the conduct under § 2.") (quotations omitted).

**C.     Plaintiff Fails to State a Claim for Monopolization and Attempted Monopolization**

Plaintiff alleges that ClubReady is either an attempted monopolist or a monopolist that has engaged in conduct in violation of Section 2 of the Sherman Act. To prevail on its Section 2 monopolization claim, Plaintiff must plead: "(a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *Qualcomm*, 969 F.3d at 990. To make out an attempted monopolization claim, "a plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving market power." *Cascade Health Sols. v. Peacehealth*, 515 F.3d 883, 893 (9th Cir. 2007) (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993)). Both Plaintiff's Section 2 claims fail because Plaintiff has not alleged a facially sustainable market, plausibly pled market share, or plausibly pled predatory conduct.

**1.     Plaintiff's Alleged Market is Facially Unsustainable**

Plaintiff's alleged product market is "facially unsustainable" because it is arbitrary, contradictory, and inadequately accounts for substitutes and the reasonable interchangeability of products in the market for providing technology solutions to gyms and fitness studios. *MLW Media LLC v. World Wrestling Entm't, Inc.*, __ F. Supp. 3d __, 2023 WL 1975241, at *3–4 (N.D. Cal. Feb. 13, 2023). The plausible "outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962); *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 380–81 (1956) ("interchangeability is largely gauged by the purchase of competing products for similar uses considering the price, characteristics and adaptability of the competing commodities.").

Courts often dismiss antitrust cases at the pleading stage where the relevant market is facially implausible. *See Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104 (9th Cir. 1999) ("Monopolization claims can only be evaluated with reference to properly defined geographic and product markets."); *see also MLW Media*, 2023 WL 1975241, at *4 (granting

1  defendant's motion to dismiss where the alleged relevant market was not plausible because "the

2  complaint uses multiple formulations to describe the proposed market, which further complicates

3  the question of the market's boundaries").

4        Plaintiff alleges that the relevant product market is "the market for fully-integrated member

5  management and licensed payment facilitator solutions for Enterprise-Level Fitness Boutiques in

6  the United States." (Compl. ¶ 24). The Complaint narrowly defines Enterprise-Level Fitness

7  Boutiques as "franchises and multi-location businesses with fifty or more fitness studio locations

8  across the country." (*Id.*) Plaintiff further alleges that ClubReady's primary competitors, Mindbody

9  and Zenoti, have their own member management software, but are not "integrated", because they

10  contract with third parties to offer payment facilitation. (*Id.* ¶¶ 25-26).

11        Perplexingly, in one breath Plaintiff alleges that MindBody and Zenoti are competitors in

12  the Relevant Market (*id.* ¶ 26), but in the next breath, claims that ClubReady's product has no

13  reasonable substitutes and therefore, by implication, controls 100% of the Relevant Market. (*Id.*)

14  Indeed, Plaintiff alleges that ClubReady's product has no reasonable substitutes because

15  "MindBody and Zenoti are not "fully-integrated member management and licensed payment

16  facilitators." (*id.* ¶ 26); *see also id.* ¶ 30 ("HHIs for Relevant Market—controlled solely by

17  ClubReady . . . "). But then, Plaintiff contradicts itself and says that ClubReady only has 60% of

18  the sales in the alleged market, and is competing with MindBody and Zenoti, which have 35% and

19  3%, respectively, of the sales in the alleged market. (*id.* ¶¶ 26-27). And as noted above, Plaintiff

20  also suggests that ClubReady has 40% of the Relevant Market. (*id.* ¶¶ 77, 85).[9]

21        Plaintiff cannot have it both ways. Either Mindbody and Zenoti are in the market, and the

22  market is broader than Plaintiff alleges (i.e., non-integrated solutions are reasonable substitutes

23  with fully integrated solutions). Or Mindbody and Zenoti are not in the market, and ClubReady has

24  100% of an artificially narrow market. Plaintiff has the burden of establishing a facially plausible

25  market; it is not the Court's job to wade through these inconsistencies to determine if Plaintiff has

26  a path forward. Such an inherent contradiction within the Complaint is grounds alone for the Court

27  to find that the alleged relevant market is not plausible. *See Apple, Inc. v. Psystar Corp.*, 586 F.

28

---

[9] *See supra*, n.7.

Supp. 2d 1190, 1200 (N.D. Cal. 2008) (dismissing antitrust counterclaim for failure to plausibly allege a relevant market because the "circular nature" of plaintiff's market definition was "internally contradictory" because it alleged a one product, "unique market" for an operating system but also sought to include a hardware market in the relevant market).

Of course, if MindBody and Zenoti are in the Relevant Market, as Plaintiff contends in some places, then it logically follows that Plaintiff's claim that non-integrated products are not economic substitutes to integrated products (Compl. ¶ 27) is implausible on its face. But if Plaintiff is claiming that the market is limited to ClubReady's singular product for a singular customer, Plaintiff fails to plausibly allege why integrated and non-integrated products are not reasonable substitutes.

For example, Plaintiff spends paragraphs talking about why integrated solutions are superior and more efficient (*id.* ¶¶ 3, 21, 23, 26-27) than non-integrated solutions, but unique features or integration of multiple features in one is not sufficient to define a relevant product market. *See Streamcast Networks, Inc. v. Skype Techs., S.A.*, 547 F. Supp. 2d 1086, 1095 (C.D. Cal. 2007) (plaintiff's single-brand market definition was too narrow because even though defendant's product "possesses some unique attributes and components that may make it more attractive and efficient," plaintiff failed to plausibly allege "that other P2P applications and networks do not permit users to accomplish the same basic task of searching for and downloading a variety of media files from the internet."); *see also Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1377 (9th Cir. 1989). In *Thurman Industries*, the Ninth Circuit rejected plaintiff's proposed "cluster" market definition because although defendant's stores offered a unique combination of supplies and advice, they were interchangeable with those supplies and advice provided at specialty stores or general department store chains. 875 F.2d at 1377. There was no evidence that the combination package would lure customers away from these other stores. *Id.* Here, there is no plausible allegation that customers cannot accomplish the same basic task through ClubReady, MindBody, Zenoti, and many others.[10] Similarly, while Fitness Technologies

---

[10] For example, the Complaint references Glofox as a "potential competitor" (Compl. ¶ 38) but doesn't explain what it does, its market share, and how it fits into the Relevant Market.

pleads it offers a "unique combination," because they are integrated, that does not mean non-combination / non-integrated options are not reasonable substitutes. Further, courts strongly disfavor single product markets. *Psystar*, 586 F. Supp. 2d at 1198 ("Single-brand markets are, at a minimum, extremely rare.").

Plaintiff's alleged Relevant Market is also defined by an arbitrary set of customers. Plaintiff inexplicably claims that the alleged market only includes services to certain types and size of customers – Enterprise-Level Fitness Boutiques – which it defines as "franchises and multi-location businesses with fifty or more fitness studio locations across the country." (Compl. ¶ 24). That is, plaintiff's market definition carves out any member management or payment software solution provider that serves big box gyms or boutique studios with less than 50 locations. But this alleged market limitation also fails on its face because products, not customers, define the boundaries of the market. *See Plush Lounge Las Vegas LLC v. Hotspur Resorts Nevada Inc*, 2008 WL 11338198, at *9 (C.D. Cal. Sept. 23, 2008) ("Plaintiff's attempt to focus on the Resort's hotel guests as being the sole or primary consumers of its products or services cannot be used to define the boundaries of the market or to establish the Defendant's purported monopoly power within the market."). Plaintiff does not explain why a boutique studio brand with only 45 locations, rather than 50, for example, cannot use the products provided by ClubReady or its competitors. Plaintiff proposed market is based "solely on [its] own preferences" to contract with a particular customer base, and this is grounds for dismissal of its antitrust claims. *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1065 (9th Cir. 2001).

In sum, Plaintiff's alleged product market is facially flawed because it is self-contradictory, does not account for economic substitutes, and is improperly limited to a very particular set of customers.

### 2. Plaintiff Also Fails to Plausibly Plead ClubReady has Market Power.

Because Plaintiff did not properly plead a relevant market, it cannot allege that Defendant has market power. *Rebel Oil Co., Inc.v. Atl. Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995). This alone is sufficient to dismiss its Sherman Act claims. *Id.* at 1445. But even assuming that Plaintiff's market definition was plausible, Plaintiff's claims also fail because it does not adequately plead

1  that ClubReady has monopoly power or market power with a dangerous probability of becoming

2  monopoly power in that market.

3      Market power is demonstrated by a party's "ability to raise prices profitably by restricting

4  output." *Am. Express*, 138 S. Ct. at 2288.  At minimum, a plaintiff may be able to establish a

5  defendant's market power by alleging that it has a market share above a certain level in the relevant

6  market.  In the Ninth Circuit, courts "generally require a 65% market share to establish a prima

7  facie case of market power" for monopolization claims.  *Image Technical Servs., Inc. v. Eastman

8  Kodak Co*., 125 F.3d 1195, 1206 (9th Cir. 1997); *see also Distance Learning Co. v. Maynard*, 2020

9  WL 2995529, at *7 (N.D. Cal. June 4, 2020) ("Plaintiff can demonstrate that Defendants occupy

10  53.8% of the DMV's list, but even taking as true the allegation that consumers are likely to select

11  the schools listed at the top of the list, this does not translate to market share.").

12      Here, Plaintiff does not even allege market share above 65% threshold.  The Complaint

13  alleges that ClubReady only controls 60% of the relevant market.  (Compl. ¶¶ 6, 26, 33, 34, 52).

14  Even if ClubReady's alleged 60% market share was adequate to establish market power, this

15  number is implausible because it is not supported by any facts.  *Distance Learning*, 2020 WL

16  2995529, at *7 (rejecting market share allegations where the plaintiff "offered no basis for the

17  implausible underlying assumption" in its market share calculation).  Plaintiff simply plucks 60%

18  out of thin air, with no support. Further, it also contradicts itself and suggests in its Section 1 claim,

19  that ClubReady may only have 40% of the market. That is insufficient to establish a Section 2 claim

20  and this contradiction alone is sufficient to dismiss its claims. *Psystar Corp.*, 586 F. Supp. 2d at

21  1200 (dismissing antitrust claims due to contradictory relevant market definitions).

**3.      Plaintiff fails to adequately allege that ClubReady engaged in exclusionary or predatory or anticompetitive conduct.**

24      Plaintiff alleges that ClubReady has engaged in a variety of anticompetitive conduct to

25  acquire and / or maintain monopoly power in the alleged relevant market.  This conduct includes

26  requiring exclusive dealing provisions in its vendor agreements, acquiring other companies that

27  offer software solutions to its customers, suing and threatening to sue employees who accept

28  employment with a competitor, and imposing an anti-employee-poach policy on competitors.

(Compl. ¶ 101).  As discussed above, the exclusivity provisions are not unlawful restraints and are not exclusionary, for the same reasons. *See supra*, pp. 14, 18.

Plaintiff alleges a litany of other complaints. (Compl. ¶¶ 93, 101) (alleging that ClubReady unlawfully acquires technology companies, sues former employees who accept employment with competitors, and imposes no-poach policy on competitors). But, as a matter of law, even though Plaintiff does not like ClubReady's alleged conduct, such conduct is not anticompetitive if it does not foreclose competition.  *See Pac. Steel*, 2021 WL 2037961, at *10 (rejecting Section 2 claim where plaintiff's preferred, but not sole, method of reaching market was foreclosed); *United States v. Syufy Enters.*, 903 F.2d 659, 673 (9th Cir. 1990) ("in a competitive market, buying out competitors is not merely permissible, it contributes to market stability and promotes the efficient allocation of resources."); *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 1003 (N.D. Cal. 2020) (dismissing acquisitions of competitors allegations because there the plaintiff did not allege that the acquired companies "were willing to, or could," compete with defendant). Here, there are no allegations that the proposed acquisitions were themselves anticompetitive or that any antitrust agency challenged them. Similarly, its labor related claims are misplaced. Taking as true that ClubReady has non-competes in place (Compl. ¶¶ 59, 72), and assuming only for the sake of argument that Plaintiff has standing to sue for those agreements, it has provided insufficient detail to assess whether those provisions are indeed anticompetitive – such as how long the provisions are, who they apply to, what constitutes a competitor, the size of the labor market, the number of employees foreclosed.

### 4.      Plaintiff fails to allege ClubReady had a specific intent to monopolize.

To establish its attempted monopolization claim, Plaintiff must also independently allege that ClubReady acted with a "specific intent to control prices or destroy competition in the relevant market[.]" *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 736 (9th Cir. 1987). Accordingly, Plaintiff must plausibly plead ClubReady "had the specific intent to seize monopoly power, exclude competition, or control prices," *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 2017 WL 6059299, at *8 (N.D. Cal. Dec. 7, 2017), given a pattern of exclusionary behavior by defendants against a series of competitors, *United Energy Trading, LLC*

*v. PG&E*, 200 F. Supp. 3d 1012, 1023 (N.D. Cal. 2016).

Plaintiff offers no allegations that ClubReady entered the MVA and engaged in any of the alleged conduct with the intent of improperly gaining share, rather than for the legitimate purpose of competing.  Further, Plaintiff offers no allegations that ClubReady even knew of Project Indigo / Fitness Technologies such that it would engage in a series of conduct to stamp it out before it even existed.

Further, Plaintiff's specific intent allegations are contradicted by its concessions that there are other companies competing against ClubReady in the alleged market.  (Compl. ¶¶ 25-26); *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1078–79 (E.D. Cal. 2011) (holding existence of "other competitors in the market" undercut plaintiff's "conclusory allegation of specific intent" and granting motion to dismiss).  Indeed, Plaintiff admits that MindBody and Zenoti have 35% and 3% market share, respectively. It is therefore not plausible that ClubReady intended to eliminate Plaintiff, but not other companies from the market.  If ClubReady wanted to gain monopoly share, it would need to exclude MindBody and Zenoti, which Plaintiff does not even allege ClubReady is seeking to do.

5. **Plaintiff fails to allege that ClubReady's conduct created a dangerous probability of achieving monopoly power.**

Finally, Plaintiff fails to allege that ClubReady's conduct resulted in a dangerous probability of its achieving monopoly power. *See Am. Tobacco Co. v. United States*, 328 U.S. 781, 785 (1946); *Spectrum Sports*, 506 U.S. at 456.  Because its market definition and market power allegations fail, it cannot allege that ClubReady's conduct will allow it to increase its share.

Indeed, the Complaint does not (and cannot) allege that excluding Plaintiff, which has zero percent market share, will somehow allow ClubReady to increase its share.  *See supra,* p. 20.  The Complaint does not allege or even speculate that ClubReady will likely exclude other rivals in the alleged market such as MindBody and Zenoti.

Because Plaintiff cannot plead any of the elements of its attempted monopolization claims, they should be dismissed.

1

**D.      Plaintiff's Declaratory Judgment Claim Fails**

Pursuant to the Declaratory Judgment Act ("DJA"), Plaintiff seeks a declaration from the Court that "it has not misappropriated any ClubReady trade secrets."  (Compl. ¶ 111).  The DJA provides that in "a case of actual controversy within its jurisdiction," a court "may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201.  The "phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."  *Mendia v. Garcia*, 165 F. Supp. 3d 861, 894 (N.D. Cal. 2016) (cleaned up) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

Here, the Complaint lacks any plausible allegations that ClubReady has sued it in other forums for misappropriation of trade secrets.  This failure is fatal to this declaratory action because there is no "actual controversy" between Plaintiff and ClubReady concerning Plaintiff's alleged misappropriation of ClubReady's trade secrets that this Court can resolve. *Mendia*, 165 F. Supp. at 894.

In addition, a party is not entitled to declaratory relief where it fails to state a claim for any of its substantive causes of action. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1097 (N.D. Cal. 2022) (dismissing declaratory relief claim because all other claims had been dismissed). Because Plaintiff's underlying claims fail for the reasons explained above, its claim for declaratory relief under 28 U.S.C. § 2201 should also be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, ClubReady requests that the Court dismiss Plaintiff's claims in their entirety.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CLUBREADY'S MOTION TO DISMISS
CASE NO. 3:23-CV-03642-VC

1    Dated: September 8, 2023                    COOLEY LLP

2

3                                                */s/ Beatriz Mejia*
                                                Beatriz Mejia (SBN 190948)
4                                                3 Embarcadero Center, 20th Floor
                                                San Francisco, CA 94111
5                                                Telephone:   +1 415 693 2000
                                                Facsimile:   +1 415 693 2222
6                                                mejiab@cooley.com

7                                                Deepti Bansal (Admitted *Pro Hac Vice*)
                                                Khary J. Anderson (Admitted *Pro Hac Vice*)
8                                                1299 Pennsylvania Avenue NW, Suite 700
                                                Washington, DC 20004
9                                                Telephone:   +1 202 842 7800
                                                Facsimile:   +1 202 842 7899
10                                               dbansal@cooley.com
                                                kjanderson@cooley.com
11

12                                               Germaine Habell (SBN 333090)
                                                355 S. Grand Avenue, Suite 900
13                                               Los Angeles, CA 90071-1560
                                                Telephone:   +1 213 561 3250
14                                               Facsimile:   +1 213 561 3244
                                                ghabell@cooley.com
15

16                                               *Attorneys for Defendant ClubReady, LLC*

17

18

19

20

21

22

23

24

25

26

27

28